Bob Pemberton, Justice
The pivotal issue presented in this mandamus proceeding is whether a former-but not current-member of a Texas limited liability company has standing to assert derivative claims on that entity's behalf. At least in the posture of this proceeding, the former member does not.
BACKGROUND
The underlying litigation concerns two successive Texas Department of Transportation contracts to operate TxDOT's "Informational Logo Sign and Tourist-Oriented Directional Sign Program," the program involving the now-familiar blue signs on Texas highways that advise motorists of participating businesses accessible from upcoming exits. In 2006, TxDOT awarded this "logo-sign contract" jointly to Media Choice, LLC (one of the relators here), and Quorum Media, LLC, for an initial five-year term beginning on January 1, 2007, with optional extension (ultimately exercised) for another five-year term (i.e., through December 31, 2016).[1] In advance of the effective date, Media *344 Choice and Quorum Media formed, under Texas law, a third LLC-LoneStar Logos & Signs, LLC (LoneStar 1), also a relator here-for the express purpose of performing "all of the[ir] day-to-day operational responsibilities" under the 2006 logo-sign contract. To that end, the three executed a "Management Agreement" assigning those duties to LoneStar 1 during the 2006 logo-sign contract's term.[2]
As the December 31, 2016, termination of the 2006 logo-sign contract approached, TxDOT solicited bids for a new ten-year logo-sign contract to commence on January 1, 2017. Media Choice bid on this contract, and a new LLC was formed-LoneStar Logos Management Company, LLC (LoneStar 2)-to assist Media Choice with the proposal and to perform its day-to-day operational responsibilities under the contract, similar to LoneStar 1 under the prior logo-sign contract, in the event Media Choice was successful. Media Choice ultimately won the contract, and it and LoneStar 2 have operated the logo-sign program since January 1, 2017. Meanwhile, upon the December 31, 2016, termination of the 2006 logo-sign contract and the Management Agreement, LoneStar 1 ceased business operations, although the entity remains in existence.
At relevant times, the ownership of LoneStar 1 has consisted of six members: Media Choice, which holds approximately 52.26 percent; Dunster Live, LLC, which holds thirty percent; and four members that hold interests of less than ten percent each, which include relator Vincent Hazen, who owns a 5.5 percent interest.[3] Five of these six members-excluding only Dunster-also own the entirety of LoneStar 2. This distinction is a key focus of the underlying litigation, in which Dunster seeks damages based on allegations that the five LoneStar 1 majority owners acted wrongfully in pursuing and securing the 2017 logo-sign contract with their new LoneStar 2 entity as operator, as opposed to a continued or repurposed iteration of LoneStar 1, and thereby excluding Dunster from the benefits they enjoy under that contract.[4] The defendants include LoneStar 2, relator Media Choice, and relator Hazen. Dunster purports to assert claims both in its individual behalf (complaining, e.g., of a "covert scheme" by defendants to enrich themselves at Dunster's expense) and derivatively on behalf of relator LoneStar 1 (alleging, e.g., that defendants wrongfully utilized LoneStar 1 assets to benefit LoneStar 2). In the latter regard, Dunster has included LoneStar 1 as a nominal defendant.
*345 Relators acknowledge that the five LoneStar 1 majority owners sought deliberately to exclude Dunster from their dealings relating to the 2017 logo-sign contract-and maintain that they possessed both the legal right and good reason to do so.[5] But the immediate focus of the present proceeding is the threshold question of Dunster's standing to pursue its derivative claims. Relators and other defendants challenged Dunster's standing below through a motion for partial summary judgment seeking dismissal of all claims of LoneStar 1 that Dunster was purporting to assert on that entity's behalf.[6] The motion asserted two related grounds.
First, the movants sought to establish as a matter of law that Dunster had ceased to be a member of LoneStar 1 in October 2016-before Dunster filed the present lawsuit[7] -when LoneStar 1 through its managers had redeemed Dunster's interest after Dunster failed to pay a capital call timely. In support, the movants presented summary-judgment evidence regarding the circumstances of this capital call and the redemption in an effort to establish that these actions had been within LoneStar 1's rights under the company *346 agreement and effective legally. In response, Dunster disputed the legal effectiveness of the redemption under the company agreement. Dunster also argued, as further grounds for avoiding summary judgment, that the "purported redemption" was void or ineffective "due to the breach of fiduciary duties by the other members and managers of LoneStar [1]" and because it lacked "a valid business purpose." The movants countered that Dunster had failed to raise a fact issue as to any of these grounds, and that their summary-judgment proof had established a valid business purpose conclusively.
The second ground on which the movants relied was purely one of law-the October 2016 cessation of Dunster's member interest, they asserted, had also terminated Dunster's standing to assert derivative claims on that entity's behalf. In response to that assertion, Dunster insisted that the movants had not invoked any standing requirement that was properly applicable to LoneStar 1 and that Texas law at most would have required merely that Dunster had been a member of LoneStar 1 at the time the derivative claims had accrued. Because Dunster had been a member of LoneStar 1 during this time period, it reasoned, it satisfied any standing requirement that Texas law could have imposed on it.
The district court granted the motion as to the movants' first ground but denied it as to the second. The court ruled that "Plaintiff Dunster Live, LLC's membership interest in LoneStar Logo & Signs, LLC was redeemed and Plaintiff Dunster Live, LLC ceased being a member of LoneStar Logo & Signs, LLC as of October 13, 2016." But this cessation of membership did not negate Dunster's standing, the court further held, because "Plaintiff Dunster Live, LLC was a member at the time its derivative claims accrued and, therefore, it has standing to bring its derivative claims."
Relators now seek mandamus relief from the portion of the district court's order that denied its second summary-judgment ground. They urge us to direct the district court to vacate that portion of its order and instead grant their motion in full and dismiss all of the claims that Dunster asserts on LoneStar 1's behalf.
ANALYSIS
We may issue a writ of mandamus to correct a trial court's "clear abuse of discretion" where no "adequate" remedy by appeal exists.[8] Relators argue that the district court misinterpreted or misapplied governing Texas law-a type of abuse of discretion[9] -in denying them summary judgment after having determined as a matter of law that Dunster's membership interest had ceased in October 2016, before it filed suit. Relators rely on what they view as a "straightforward principle of Texas law"-"a non-member of [an LLC] does not have standing to assert derivative claims on behalf of the company." Relators further profess to lack an "adequate" appellate remedy for the harm done by allowing Dunster's derivative claims to go forward despite, as they see it, its lack of standing to assert those claims. We agree with both of relators' assertions and that mandamus is appropriate.
*347 As both sides appear to acknowledge, the legal principles governing derivative claims brought on behalf of LLCs are, at least with respect to this case, materially identical extensions or analogues of those that have developed in regard to shareholder-derivative actions on behalf of corporations. The shareholder-derivative action is rooted historically in equity and evolved for the "purpose of ... afford[ing] a means by which a stockholder, powerless to bring a direct civil action at law against faithless directors and managers, may seek to vindicate corporate rights that the corporation itself has refused to enforce."[10] This remedy for shareholders was deemed "justified only by [the] proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire qua stockholder of the corporation which is the real party in interest."[11] From these rationales has followed the rule, recognized in Texas as elsewhere, that a corporate shareholder (and, by logical extension, an LLC member) must have and maintain that ownership status in order to have standing to prosecute derivative claims on the entity's behalf.[12] And while Texas courts have recognized an equitable exception to this ownership requirement where a shareholder's interest is "destroyed" involuntarily without a valid business purpose,[13] the district court has determined that this exception is not applicable here by granting partial summary judgment recognizing that the redemption had been effective in causing Dunster to "cease[ ] being a member of LoneStar Logo & Signs, LLC as of October 13, 2016."[14]
*348 In insisting that it possesses standing to bring derivative claims despite this pre-suit loss of member status, Dunster relies principally on provisions within Subchapter J of Chapter 101 of the Business Organizations Code. Chapter 101 is Texas's primary statutory framework governing LLCs, and Subchapter J, consisting of Sections 101.451 through 101.463, addresses "derivative proceedings."[15] Subchapter J parallels the statutes governing "derivative proceedings" involving for-profit corporations, currently found in Subchapter L of Business Organizations Code Chapter 21.[16] Consequently, as both sides recognize, Subchapter L and its analogous predecessors inform the meaning and application of Subchapter J, as well.
Section 101.451 defines a "derivative proceeding" within Subchapter J, in relevant part, as "a civil suit in the right of a domestic limited liability company."[17] Sections 101.452 through 101.459 then prescribe a series of limitations and procedural requirements that generally apply in "derivative proceedings." Among these are provisions aimed at affording the managers the power to exercise their business judgment in deciding whether the LLC should pursue the purported claims, including the requirement of a demand[18] and provisions for mandatory dismissal based upon the good-faith determination by disinterested and independent managers or a special investigative committee that pursuit of the claims is not in the LLC's best interest.[19] Additionally, Section 101.452, titled "Standing to Bring Proceeding," prescribes the following additional requirements:
A member may not institute or maintain a derivative proceeding unless:
(1) the member:
(A) was a member of the limited liability company at the time of the act or omission complained of; or
(B) became a member by operation of law from a person that was a member at the time of the act or omission complained of; and
(2) the member fairly and adequately represents the interests of the limited liability company in enforcing the right of the limited liability company.[20]
The Texas Supreme Court has described the analogous provision governing shareholder-derivative suits as "statutory standing."[21] Subsection (1) of the provision codifies or incorporates the so-called "contemporaneous ownership" requirement,[22] which seeks to prevent subsequent *349 purchasers of interests in an entity from speculating in litigation and purchasing grievances in order to sue the entity's governing body or officers.[23]
However, Section 101.463 prescribes different requirements with respect to "closely held" LLCs,[24] a category that undisputedly encompasses LoneStar 1.[25] It provides, "Sections 101.452-101.459 do not apply to a closely held limited liability company."[26] The import and effect of this exemption, as the Texas Supreme Court has observed in regard to the parallel provisions that govern shareholder-derivative suits, are that "the Legislature has enacted special rules to allow its shareholders to more easily bring a derivative suit on behalf of the corporation," including "without having to prove that they 'fairly and adequately represent[ ] the interests of' the corporation, without having to make a 'demand' upon the corporation, as in other derivative actions, and without fear of a stay or dismissal based on actions of other corporate actors in response to a demand."[27] Section 101.463 also affords trial courts discretion, "[i]f justice requires," to treat "a derivative proceeding brought by a member of a closely held limited liability company ... as a direct action brought by the member for the member's own benefit" and to order "a recovery in a direct or derivative proceeding by a member [to be] paid directly to the plaintiff or to the limited liability company if necessary to protect the interests of creditors or other members of the limited liability company."[28]
The Texas Supreme Court has determined that the statutory standing, demand, and mandatory-dismissal provisions applicable to shareholder-derivative actions represent "a statutory equivalent" enacted by the Legislature to supplant the iteration of the action that had evolved in equity or common law.[29] It follows, in that court's view, that the exemption for closely held corporations, coupled with the analog to Section 101.451 's definition of a "derivative proceeding" as "a civil suit in the right of a domestic corporation," had the effect of codifying a version of the shareholder-derivative action authorizing "a shareholder of a closely held corporation [to] bring a derivative proceeding in the right of the corporation" free of the statutory standing, demand, and mandatory-dismissal requirements that would otherwise apply, and *350 that these additional requirements did not survive in equitable or common-law form as a default.[30]
The gravamen of Dunster's standing theory is that Sections 101.463 and 101.451, as the Texas Supreme Court has construed this same language in regard to shareholder-derivative suits, codifies a version of the derivative action that also eliminates any requirement that a claimant presently possess member status in order to assert derivative claims on behalf of a closely held LLC. In the alternative, Dunster asserts that it satisfies the contemporaneous-ownership requirement in Section 101.452 because it still had member status when the derivative claims accrued; this is the rationale on which the district court expressly relied when ultimately denying summary judgment on the standing issue. Both rationales rest upon the premise that the Legislature in Subchapter J intended to eliminate any requirement of present member status from the "derivative proceeding" it codifies. The statutory language does not go that far, nor has the Texas Supreme Court so held.
As an initial observation, the implications of Dunster's standing theory should give some pause-Dunster's reasoning seemingly would imply that a litigant need not meet standing requirements of any kind in order to bring a derivative suit on a closely held LLC's behalf. Suggesting otherwise, Dunster insists that Section 101.463 's provision allowing trial courts to treat "a derivative proceeding brought by a member of a closely held limited liability company ... as a direct action brought by the member for the member's own benefit" has the effect of making a plaintiff's standing to assert derivative claims contingent on its standing to assert direct claims, in essence collapsing the two requirements into one. Not so. As the Texas Supreme Court has explained regarding parallel statutory language governing closely held corporations, "the proceeding still must be derivative."[31] And as relators urge, a "fundamental" and "definitional" attribute of a "derivative action," as long known to Texas law (and more generally), is that the claimant possesses a present ownership interest in the entity on whose behalf it purports to sue, such that it has a stake in the outcome of those claims.[32] We are to presume that the Legislature codified its statutory versions of "derivative action[s]" with awareness of and reference to that background law,[33] and without intending to stretch statutory standing so far as to potentially *351 implicate justiciability concerns.[34]
The text of Subchapter J confirms that the Legislature contemplated rather than abrogated a "derivative proceeding" having this fundamental, conventional feature of a claimant that presently possesses an ownership interest in the LLC. This is apparent even in Section 101.463, which addresses "a derivative proceeding brought by a member of a closely held limited liability company" and "a recovery in a direct or derivative proceeding by a member. "[35] The same is true of Section 101.452 's statutory standing requirements, which are phrased as additional prerequisites that must be satisfied by one who is presently an LLC "member,"[36] and of other provisions within the subchapter.[37] Relying on parallel language in statutory-standing provisions governing shareholder-derivative suits, at least two sister courts have similarly concluded that the references to "shareholder" imply "a further requirement that the shareholder status be maintained throughout the suit."[38] And the Texas Supreme Court has never held otherwise. On the contrary, its recent decisions addressing derivative claims brought on behalf of closely held corporations have uniformly presumed a plaintiff who is presently a shareholder.[39]
*352 Ultimately the sole authority Dunster can cite in support of its standing as a former member to bring derivative claims on LoneStar 1's behalf appears in a memorandum opinion of a Texas federal district court that involved a different type of action-a suit by a former member of a nonprofit corporation alleging ultra vires acts by directors and officers of the corporation.[40] In that case, Inge v. Walker , the district court dismissed the ultra vires claims for lack of standing, reasoning that the statutory authorization for those claims referred to "a shareholder or member," and thereby allowed "only current shareholders or members [to] assert ultra vires claims."[41] In that context, the court rejected-in a footnote-an attempt by the claimant to invoke the equitable exception from shareholder derivative actions allowing suit by former shareholders whose interests were involuntarily destroyed without legitimate business justification.[42] In holding that exception inapplicable, the court identified what it perceived to be a material distinction between the ultra vires statute and the statutory standing provision governing shareholder derivative actions. In the court's view, the contemporaneous ownership requirement (i.e., the requirement of shareholder status at the time of the complained-of act) negatively implied that "former shareholders are expressly permitted to bring derivative suits."[43] For the reasons we have previously elaborated, we respectfully differ with this assessment of the statutory contemporaneous-ownership requirement. We would observe, however, that the Inge court's reasoning that the ultra vires statute's reference to "a shareholder or member" implied standing for "only current shareholders or members" actually lends support to our construction of Subchapter J.
Under a correct construction of Subchapter J, the district court abused its discretion in holding that Dunster possessed standing as a former member to prosecute derivative claims on LoneStar 1's behalf. Relators have also demonstrated that they lack an "adequate" remedy by appeal after final judgment. The "adequacy" of an appellate remedy is now evaluated explicitly in light of the benefits versus detriments of the mandamus alternative.[44] " 'The most frequent use [the Texas Supreme Court] ha[s] made of mandamus relief involves cases in which the very act of proceeding to trial-regardless of the outcome-would defeat the substantive right involved.' "[45] That is the situation presented here-allowing Dunster to prosecute derivative claims on LoneStar 1's purported behalf when it lacks standing to do so deprives LoneStar 1 and its current members of an important substantive right *353 not to have their governing mechanisms subverted and LoneStar 1 enlisted in pursuit of claims that only Dunster, effectively a bystander, desires. Both the Texas Supreme Court and our sister courts of appeals have granted mandamus relief to remedy a plaintiff's noncompliance with other prerequisites for bringing derivative actions.[46] We should do likewise here. Dunster's arguments to the contrary presume that it possesses standing[47] or otherwise lack merit.[48]
CONCLUSION
Having determined that the trial court abused its discretion by failing to dismiss Dunster's derivative claims for lack of standing, we conditionally grant the petition for writ of mandamus. We lift the temporary stay of the trial-level proceedings and direct the trial court to undertake proceedings consistent with this opinion, including (1) vacating its March 23, 2018 order to the extent that order denies the motion for partial summary judgment, and (2) instead granting summary judgment and dismissing, for want of standing, Dunster's derivative claims brought on behalf of LoneStar 1. The writ will issue only in the unlikely event that the district court does not comply with our order.

This contract award by TxDOT prompted lawsuits by an unsuccessful incumbent vendor, which in turn gave rise to two appeals to this Court. See generally Texas Logos, L.P. v. Brinkmeyer , 254 S.W.3d 644, 646-59 (Tex. App.-Austin 2008, no pet.) ; Texas Logos, L.P. v. Texas Dep't of Transp. , 241 S.W.3d 105, 108-24 (Tex. App.-Austin 2007, no pet.).

The Management Agreement provided in relevant part that:
Vendor [previously defined as Media Choice and Quorum Media] does hereby assign to Manager [LoneStar 1] all of the day-to-day operational responsibilities [under the 2006 logo-sign contract] and Manager does hereby assume the obligation to perform same, understanding that Vendor shall remain fully responsible to TxDOT for all obligations thereunder and Manager shall be responsible directly to Vendor for its failure to perform any obligations thereunder.
The LoneStar 1 Company Agreement correspondingly specified that:
The purpose of the Company is to perform all of its obligations set forth in that certain Management Agreement dated effective August 3, 2006, with Media Choice, LLC and Quorum Media Group, LLC for the day to day operations of [the 2006 logo-sign contract] with [TxDOT] ... and for any other lawful purpose approved by the Managers.

The other three members and their respective ownership shares are Drew Cartwright (approximately 7.01 percent), Johnston Media, LLC (4.23 percent), and Brad Scott (1 percent).

Quorum Media is also a plaintiff, but its claims are not directly at issue in this proceeding.

Relators decry Dunster as a "Dallas-based corporate raider" that had effected a "completely unwelcome acquisition and forcible entry" into LoneStar 1 in 2011. According to relators, "Dunster used personal relationships with a bank to purchase the outstanding debt of certain minority members of LoneStar [1] that was secured by the members' interest in the company, threatened to foreclose on that debt, used cash calls Dunster knew could not be met to acquire those members' interest, and thereby accomplished a hostile takeover of a 30 percent share in LoneStar [1]." Relators add that "[t]here were no circumstances under which any of the other members of LoneStar [1]-the 70 percent majority-were ever going to continue in a joint enterprise with Dunster beyond the expiration of the 2006 [logo-sign] contract." Accordingly, relators continue, they executed with Dunster a revised LoneStar 1 company agreement containing a term they view as permitting the very activities of which Dunster now complains:
Each Manager, Member and officer of [LoneStar 1] at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with [LoneStar 1], with no obligation to offer to the company or any other Member, Manager or officer the right to participate.
Dunster perceives the parties' respective rights and duties differently.

The movants sought dismissal of two claims in their entirety, designated by Dunster as "Count Three" and "Count Five," the former of which complained of alleged misappropriation of LoneStar 1 trade secrets and the latter of which sought a declaration that LoneStar 1 had no duty to indemnify the defendants. They also sought dismissal of three additional claims-Count One (breach of fiduciary duty), Count Two (aiding and abetting breach of fiduciary duty), and Count Four (conspiracy to breach fiduciary duties and misappropriate LoneStar 1 trade secrets, assets, and goodwill)-to the extent asserted derivatively or otherwise on behalf of LoneStar 1.

Dunster had first filed suit in federal court-in advance of the January 1, 2017, commencement of the new logo-sign contract-asserting a version of its claims in which it sought, in addition to monetary relief, injunctive relief calculated to prevent LoneStar 2's performance of that contract. Following a temporary-injunction hearing in December 2016, the court (Hon. Lee Yeakel, presiding) denied that relief, explicitly declining to find or conclude that Dunster had proven a substantial likelihood of success on the merits or any other required element. The court assumed for purposes of this analysis that Dunster had standing to pursue its derivative claims, albeit while terming the question "an issue of some concern to the court" that it would address when deciding pending defense motions to dismiss. Dunster thereafter moved for and obtained dismissal of its federal suit, following which it filed its present state-court lawsuit in March 2017.

See, e.g. , In re Prudential Ins. Co. of Am. , 148 S.W.3d 124, 135-36 (Tex. 2004) ; Walker v. Packer , 827 S.W.2d 833, 839 (Tex. 1992).

See, e.g. , Walker , 827 S.W.2d at 839 ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts."); see also Prudential Ins. Co. , 148 S.W.3d at 135 (emphasizing that this is true "even when the law is unsettled" (citing Huie v. DeShazo , 922 S.W.2d 920, 927-28 (Tex. 1996) ) ).

Schilling v. Belcher , 582 F.2d 995, 1001 (5th Cir. 1978) ; see also Cohen v. Beneficial Indus. Loan Corp. , 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) ("Equity came to the relief of the stockholder, who had no standing to bring civil action at law against faithless directors and managers."), quoted in Sneed v. Webre , 465 S.W.3d 169, 183 (Tex. 2015).

Schilling , 582 F.2d at 1002 (quoting Kauffman v. Dreyfus Fund, Inc. , 434 F.2d 727, 735-36 (3rd Cir. 1970), cert. denied , 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) ) (alteration in original); accord Somers v. Crane ex rel. EGL, Inc. , 295 S.W.3d 5, 14 (Tex. App.-Houston [1st Dist.] 2009, pet. denied) ("The reasoning behind allowing a shareholder to maintain a suit in the name of the corporation when those in control wrongfully refuse to maintain it is that a shareholder has a proprietary interest in the corporation. Therefore, when a shareholder sues, he is protecting his own interests as well as those of the corporation." (quoting, with emphasis added, Zauber v. Murray Sav. Ass'n , 591 S.W.2d 932, 937 (Tex. Civ. App.-Dallas 1979), writ ref'd n.r.e., 601 S.W.2d 940 (Tex. 1980) (per curiam) ) ).

See Somers , 295 S.W.3d at 14-15 ("[A] shareholder must remain a shareholder in order to maintain a derivative suit." (discussing Zauber , 591 S.W.2d at 937-38, and citing Prudential-Bache Secs., Inc. v. Matthews , 627 F.Supp. 622, 624 (S.D. Tex. 1986), Lewis v. Ward , 852 A.2d 896, 902-04 (Del. 2004), and Schreiber v. Carney , 447 A.2d 17, 21 (Del. Ch. 1982) ) ).

See Zauber , 591 S.W.2d at 938 ("If no valid business purpose exists, a court of equity will consider the destruction of a stockholder's status a nullity and allow him to proceed with the suit in the name of the corporation.").

For this reason, Dunster is mistaken in insisting that "factual disputes regarding the effectiveness of the purported redemption of [its] membership interest" preclude mandamus relief. The district court's summary-judgment ruling encompassed the determinations that the movants had established the redemption and resultant loss of Dunster's member status as a matter of law and that Dunster had failed to raise any genuine issue of material fact regarding alleged breaches of fiduciary duty, lack of business justification, or other ground for invalidating or avoiding the legal consequences of the redemption. Similarly unavailing are protestations by Dunster that this summary-judgment ruling was merely "interlocutory." We do not understand Dunster to assail the merits of that ruling, only its finality. To the extent Dunster does purport to challenge that ruling here, it has not shown any basis for reversal.

See generally Tex. Bus. Orgs. Code §§ 101.451 -.463.

Compare id. with id. §§ 21.551-.563.

Id. § 101.451(1).

See id. § 101.453.

See id. §§ 101.454-.459; see also Sneed , 465 S.W.3d at 180-81 (discussing parallel requirements governing shareholder-derivative suits under predecessor to Subchapter L and observing that "[t]hrough these provisions, the Legislature gave directors of most corporations the ability to exercise their business judgment in deciding whether to pursue the corporation's causes of action").

Tex. Bus. Orgs. Code § 101.452.

See Sneed , 465 S.W.3d at 181.

See Stubblefield v. Belco Mfg. Co. Inc. , 931 S.W.2d 54, 55 (Tex. App.-Austin 1996, no writ) (per curiam) (discussing the U.S. Supreme Court's Bangor Punta decision, which relied in part on the equitable concept that "a shareholder cannot complain of acts of corporate mismanagement if he acquired his shares from those who participated or acquiesced in the allegedly wrongful transactions," and observing that this "contemporaneous ownership requirement" had been codified in Texas in the form of a statutory prerequisite to shareholder derivative suits (citing Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co. , 417 U.S. 703, 710, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) ) ).

See Crowley v. Coles , 760 S.W.2d 347, 350 (Tex. App.-Houston [1st Dist.] 1988, no writ) ("The contemporaneous ownership requirement, adopted by the majority of jurisdictions by statute, court rule, or case law, and by the federal courts, reflects a sound public policy-to prevent a subsequent purchaser of shares from speculating in litigation and purchasing grievances to institute lawsuits against corporate officers and directors.").

See Tex. Bus. Orgs. Code § 101.463.

See id. § 101.463(a) (defining "closely held limited liability company" within the section as an LLC having "(1) fewer than 35 members; and (2) no membership interests listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national securities association").

Id. § 101.463(b).

Ritchie v. Rupe , 443 S.W.3d 856, 880-81 (Tex. 2014) (quoting Tex. Bus. Orgs. Code § 21.552(2) ) (internal citations omitted) (citing Tex. Bus. Orgs. Code §§ 21.553 -.555, 21.558-.559, 21.563).

Tex. Bus. Orgs. Code § 101.463(c).

See Sneed , 465 S.W.3d at 182 (quoting Hunter v. Fort Worth Capital Corp. , 620 S.W.2d 547, 550 (Tex. 1981) ).

Id. at 181 ; see also id. at 181-88.

Id. at 188.

See, e.g. , Cohen , 337 U.S. at 548, 69 S.Ct. 1221 ("Equity came to the relief of the stockholder, who had no standing to bring civil action at law against faithless officers and directors."); Schilling , 582 F.2d at 1002 (holding such intervention "justified only by [the] proprietary interest created by the stockholder relationship and the possible indirect benefits the nominal plaintiff may acquire qua stockholder of the corporation which is the real party in interest" (quoting Kauffman , 434 F.2d at 735-36 ) ); Somers , 295 S.W.3d at 14-15 ("[A] shareholder must remain a shareholder in order to maintain a derivative suit." (discussing Zauber , 591 S.W.2d at 937-38, and citing Prudential-Bache Secs., Inc. , 627 F.Supp. at 624, Lewis , 852 A.2d at 902-04, and Schreiber[v. Carney], 447 A.2d [17] 21 [ (1982) ] ) ). Again, the exception to this rule is not before us in the posture of this proceeding. See supra note 14.

See, e.g. , City of Round Rock v. Rodriguez , 399 S.W.3d 130, 137 (Tex. 2013) ("In construing a statute ... we presume that the Legislature acted with knowledge of the background law and with reference to it." (citing Texas Parks & Wildlife Dep't v. Dearing , 240 S.W.3d 330, 351 (Tex. App.-Austin 2007, pet. denied) ) ).

See Tex. Gov't Code § 311.021(1) ("In enacting a statute, it is presumed that ... compliance with the constitutions of this state and the United States is intended."); In re Allcat Claims Serv., L.P. , 356 S.W.3d 455, 468 (Tex. 2011) (orig. proceeding) (" 'Statutes are given a construction consistent with constitutional requirements, when possible, because the legislature is presumed to have intended compliance with [the Constitution].' " (quoting Proctor v. Andrews , 972 S.W.2d 729, 735 (Tex. 1998) ) (other citations omitted) ); see also Finance Comm'n of Tex. v. Norwood , 418 S.W.3d 566, 582 n.83 (Tex. 2013) ("[C]ourts' constitutional jurisdiction cannot be enlarged by statute." (citing Allcat Claims , 356 S.W.3d at 462 ) ); Heckman v. Williamson Cty. , 369 S.W.3d 137, 154-56 (Tex. 2012) (discussing constitutional standing requirements, including that [t]he plaintiff must be personally injured (citing South Tex. Water Auth. v. Lomas , 223 S.W.3d 304, 307-08 (Tex. 2007) (per curiam) (emphasis original) ) ); cf. Sneed , 465 S.W.3d at 186 & n.12 (contrasting constitutional standing with the broader sense in which shareholder "standing" is often used to describe other prerequisites or requirements in derivative actions imposed by statute or that implicate the merits).

See Tex. Bus. Orgs. Code § 101.463(c) (emphases added).

Section 101.452, again, provides:
A member may not institute or maintain a derivative proceeding unless:
(1) the member :
(A) was a member of the limited liability company at the time of the act or omission complained of; or
(B) became a member by operation of law from a person that was a member at the time of the act or omission complained of; and
(2) the member fairly and adequately represents the interests of the limited liability company in enforcing the right of the limited liability company.
Id. § 101.452 (emphases added).

See id. §§ 101.453 (demand requirement addressed to "the member"), .456 (limiting "discovery by a member" in face of dismissal motion), .458 (describing burden of proof imposed on "the plaintiff member" to avoid dismissal).

Zauber , 591 S.W.2d at 937 (construing earlier version of statute); accord Somers , 295 S.W.3d at 14-15. And the Zauber court drew upon federal jurisprudence that had reached the same conclusion regarding analogous language in Federal Rule of Civil Procedure 23.1. See Zauber , 591 S.W.2d at 937 (citing Tryforos v. Icarian Dev. Co., S. A. , 518 F.2d 1258, 1261, 1263 (7th Cir. 1975), cert. denied , 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976) ).

See Sneed , 465 S.W.3d at 173 (observing that derivative suit at issue was brought by "[a] shareholder of a closely held parent corporation ... on behalf of the parent corporation's wholly owned subsidiary"), 178-89 (referring to "shareholder's" standing, "shareholder's derivative action," and numerous similar terms recognizing present shareholder status); Rupe , 443 S.W.3d at 880-81 (discussing "special rules" that allow "shareholders" of a closely held corporation to bring such suits "more easily").

Inge v. Walker , No. 3:16-CV-0042-B, 2017 WL 4838981, *2-3, 2017 U.S. Dist. LEXIS 177512, *5-6 (N.D. Tex. Oct. 26, 2017).

Id. , at *2 & n.2, 2017 U.S. Dist. LEXIS 177512, at *6 & n.2 (quoting Tex. Bus. Orgs. Code § 20.002(c)(1) ).

Id. (distinguishing Zauber , 591 S.W.2d at 933 ).

See ids="9998289" index="78" url="https://cite.case.law/sw2d/760/347/#p350">id. (citing Tex. Bus. Orgs. Code § 21.552(1)(A) ).

See In re Schmitz , 285 S.W.3d 451, 458 (Tex. 2009) (citing In re Poly-America, L.P. , 262 S.W.3d 337, 347 (Tex. 2008) ; Prudential , 148 S.W.3d at 135-36 ).

Id. at 459 (quoting In re McAllen Med. Ctr. , 275 S.W.3d 458, 465 (Tex. 2008) ).

See Schmitz , 285 S.W.3d at 458-59 (holding there was no "adequate" remedy on appeal where derivative plaintiff had failed to comply with applicable pre-suit demand requirement: "[a]llowing this case to proceed to trial would effectively allow a shareholder to sue for damages connected with a merger without giving the corporation's board an opportunity to make such a decision for itself" and thereby "defeat the substantive right the Legislature sought to protect"); In re Helix Energy Sols. Grp., Inc. , 440 S.W.3d 167, 177-78 (Tex. App.-Houston [14th Dist.] 2013, orig. proceeding) (granting mandamus relief to remedy trial court's failure to enforce contemporaneous-ownership requirement in shareholder-derivative suit; corporation and officers lacked "adequate" remedy by appeal because "[d]erivative actions impinge on the managerial freedom of directors" and the "business and affairs of the corporation"); see also In re XTO Energy, Inc. , 471 S.W.3d 126, 130-36 (Tex. App.-Dallas 2015, orig. proceeding) (similarly granting mandamus relief to remedy trial court's erroneous denial of plea to the jurisdiction challenging derivative claimant's standing to assert claims on behalf of trust, as allowing claims to go forward would defeat trustee's right to make litigation decisions).

Dunster points out that where a derivative claimant sues on behalf of a closely held LLC, such as LoneStar 1, "it is immaterial whether the board of directors approves or disapproves of the derivative litigation." (quoting Sneed , 465 S.W.3d at 189 (addressing analogous statutory provisions governing derivative actions on behalf of closely held corporations) ). But that proposition presumes that the derivative claimant has standing in the first place by virtue of its ownership interest. See ids="6857076" index="87" url="https://cite.case.law/sw3d/465/169/#p183">id. (addressing right of "a shareholder of a closely held corporation [to] bring a derivative proceeding" (emphasis added) ).

E.g. , Dunster suggests there is no substantive distinction between its direct claims and those it purports to assert derivatively. On the contrary, several of the claims would belong solely to LoneStar 1. See supra note 6.