# Supreme Court of Texas

## No. 24-0024

In re UMTH General Services, L.P., UMT Holdings, L.P., UMTH Land Development, L.P., Hollis M. Greenlaw, Todd F. Etter, Ben L. Wissink, and Cara D. Obert,

*Relators*

## On Petition for Writ of Mandamus

**Argued September 9, 2025**

JUSTICE BLAND delivered the opinion of the Court.

Justice Hawkins did not participate in the decision.

In this original proceeding, we decide whether individual shareholders may sue a third party based on the third party's agreement with the shareholders' corporate entity. The shareholders rely on an advisory agreement they contend creates a separate duty to individual shareholders rather than the entity as a collective whole.

We hold that the agreement does not create a duty to individual shareholders distinct from obligations to the entity. The shareholders thus must pursue claims for an injury to the entity via a derivative action. Absent both a personal cause of action and an individual injury, shareholders lack the capacity to bring claims the corporate entity owns.

Accordingly, we hold that the trial court erred in denying dismissal of the shareholders' claims. We conditionally grant mandamus relief and direct the trial court to dismiss the case with prejudice.

**I**

United Development Fund IV is a Maryland real estate investment trust with more than 12,000 shareholders. The declaration of trust forming the fund governs its shareholders' rights. The declaration provides that the Trust's shareholders are entitled "only to those rights provided in the Declaration." The shareholders "have no interest in the assets of the Trust" and "have no right to compel any partition, division, dividend or Distribution of the Trust or of its assets." The Trust's bylaws designate Maryland as the exclusive forum for derivative actions brought on the Trust's behalf.[1]

The declaration authorizes the Trust's board of trustees to delegate management authority to an advisor subject to board "supervision and control." In 2014, the board appointed UMTH General Services, L.P., as an advisor to manage the Trust's investments and day-to-day operations. Trust Chief Executive Officer Hollis M. Greenlaw executed the agreement on behalf of the Trust, and UMTH President David Hanson executed it on behalf of UMTH. The agreement states: "The Advisor shall be deemed to be in a fiduciary relationship to the Trust and its Shareholders."

Individual shareholders are not parties to the advisory agreement. The agreement is "by and between" the Trust and UMTH.

---

[1] The Trust is not a party to the underlying suit, nor to this original proceeding.

2

The section establishing UMTH's duties refers to duties to the Trust. Apart from requiring the advisor to maintain shareholder ownership records and to supervise the filing of returns and reports to shareholders on the Trust's behalf, the agreement does not refer to the shareholders except for passing references in the fees, expenses, and indemnification provisions.

In June 2021, Shareholder Nexpoint Diversified Real Estate Trust sued the Trust derivatively in Maryland for mismanagement after the trustees became the subjects of a criminal investigation. In December 2021, Nexpoint transferred its Trust shares to its wholly owned subsidiary, Nexpoint Real Estate Opportunities.[2] The Maryland court dismissed Nexpoint's derivative claims for lack of standing and subject matter jurisdiction.

While the Maryland suit was pending, Nexpoint and its subsidiary sued UMTH and its affiliates (collectively, the Advisors) in Dallas County.[3] Nexpoint and its subsidiary (collectively, the Shareholders[4]) allege that the Advisors committed corporate waste and

---

[2] The Trust's securities were publicly traded for a time, but the NASDAQ delisted the Trust in May 2017. The Securities and Exchange Commission subsequently deregistered the Trust's securities in August 2020.

[3] In addition to UMTH General Services, L.P., Relators include UMT Holdings, L.P., UMTH Land Development, L.P., Hollis M. Greenlaw, Todd F. Etter, Ben L. Wissink, and Cara D. Obert. The Shareholders allege that these parties are current and former managers, officers, or trustees of the Trust or UMTH.

[4] Although we refer to Nexpoint and its subsidiary collectively as the Shareholders, the subsidiary is the record holder of the Trust's shares in this suit.

3

mismanagement, including improper advancement of legal fees on behalf of the Trust's management and refusal to disclose requested information. Relying on the advisory agreement, the Shareholders claim that the Advisors owe each Trust shareholder an individual duty, thus permitting the Shareholders—who are not signatories to the agreement—to sue the Advisors directly. The advisory agreement provides that Texas law governs suits arising out of it.

In response to the suit, the Advisors filed a plea to the jurisdiction, a verified plea in abatement, and special exceptions. The Advisors argued that the Shareholders' claims are derivative and owned by the Trust; thus, the Shareholders have neither standing nor the capacity to sue the Advisors directly. After the trial court denied the Advisors' motions, they unsuccessfully sought mandamus relief in the court of appeals.[5]

The Advisors now seek relief from this Court. They request that we order the trial court to dismiss the underlying suit because: (1) the Shareholders cannot meet the ownership requirements necessary to sue derivatively in Texas and thus lack standing to sue; and (2) the Shareholders lack the capacity to directly sue the Advisors.

## II

We first address the Advisors' jurisdictional attack on the Shareholders' standing to sue.[6] In assessing a plea to the jurisdiction,

---

[5] 716 S.W.3d 701, 701 (Tex. App.—Dallas 2023).

[6] *See Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 352–53 (Tex. 2024) (discussing appellate courts' duty to ensure they have jurisdiction before reaching the merits).

we construe a plaintiff's pleadings liberally, taking the facts alleged as true.[7] The Advisors argue that the Shareholders fail to meet the requirements for derivative standing. The Shareholders respond that the ownership requirements necessary to confer derivative standing do not apply to their claims against the Advisors because the Shareholders have alleged their claims as individuals and not derivatively on behalf of the Trust. We agree.

In *Pike v. Texas EMC Management, LLC*,[8] we held "that a partner or other stakeholder in a business organization has constitutional standing to sue for an alleged loss in the value of its interest in the organization."[9] Thus, in Texas, even though a shareholder ordinarily cannot recover in an individual capacity for diminution in stock value resulting from an injury to the corporation,[10] such an allegation satisfies the personal injury requirement for constitutional standing.[11] The Court in *Pike* also held that "statutory provisions that . . . protect the organization's status as a separate and independent entity," including

---

[7] *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012).

[8] 610 S.W.3d 763 (Tex. 2020).

[9] *Id.* at 778.

[10] *See Massachusetts v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942) (explaining that suits for diminution of stock value usually belong to a corporation and can be brought only by the corporation or derivatively on its behalf). Texas law treats corporations and real estate investment trusts equally in assessing derivative claims. *See* Tex. Bus. Orgs. Code § 200.002(a). We thus treat "corporation" as interchangeable with "real estate investment trust" in this case.

[11] *Pike*, 610 S.W.3d at 775, 778 (distinguishing constitutional standing from capacity).

provisions governing derivative actions, do not deprive a shareholder of standing to sue for corporate wrongs.[12] A shareholder alleging an injury sufficient to confer constitutional standing, however, may nonetheless lack the capacity to pursue and recover for such a claim.[13] Because the Shareholders allege financial losses due to the Advisors' mismanagement and assert direct claims in their individual capacities, the Shareholders have constitutional standing under *Pike*.[14]

Observing that Nexpoint transferred its shares to its subsidiary in December 2021, the Advisors argue that the Shareholders do not meet the contemporaneous and continuous ownership requirements for Texas derivative standing because the subsidiary is the only record owner of shares and it did not obtain them until long after allegations of mismanagement and fraud surfaced. The Shareholders respond that the Advisors' mismanagement included improper diversion of Trust funds both before and after the transfer.

Under the Business Organizations Code, a shareholder must prove it "was a shareholder of the corporation at the time of the act or omission complained of" to have standing to bring a derivative proceeding.[15] Because the Texas derivative statute requires share ownership to "institute or *maintain* a derivative proceeding,"[16] a

---

[12] *See id.* at 778.

[13] *Id.* at 775, 778.

[14] *Id.* at 778.

[15] Tex. Bus. Orgs. Code § 21.552(a)(1)(A).

[16] *Id.* § 21.552(a) (emphasis added).

shareholder must own an interest in the corporate entity for the duration of the suit.[17]

The Shareholders in this case, however, disavow any intent to sue derivatively, conceding that the Trust's governing documents foreclose a derivative action in Texas. Maryland is the exclusive forum for derivative actions against the Trust's management, and Maryland law governs.[18] Whether the Shareholders can bring a derivative action is a question for Maryland courts to consider under Maryland law.[19] For the purpose of confirming the trial court's subject matter jurisdiction to resolve this dispute alleging individual shareholder claims, it is enough

---

[17] The courts of appeals have consistently required shareholders to have both contemporaneous and continuous ownership of shares to maintain a derivative action. *See In re LoneStar Logo & Signs, LLC*, 552 S.W.3d 342, 351 (Tex. App.—Austin 2018, orig. proceeding) (citing *Zauber v. Murray Sav. Ass'n*, 591 S.W.2d 932, 937 (Tex. App.—Dallas 1979), *writ ref'd n.r.e.*, 601 S.W.2d 940 (Tex. 1980), and *Somers ex rel. EGL, Inc. v. Crane*, 295 S.W.3d 5, 14–15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)). A majority of other jurisdictions also require shareholders to maintain ownership throughout a derivative action. *See, e.g.*, *Grosset v. Wenaas*, 175 P.3d 1184, 1194 n.9 (Cal. 2008) (collecting cases from Florida, Georgia, Indiana, Oklahoma, Louisiana, New York, Illinois, Delaware, Oregon, and Arizona); *see also Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir. 1978) (stating that courts generally interpret Federal Rule of Civil Procedure 23.1 to imply a continuous ownership requirement).

[18] *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991) (holding that the law of a corporation's state of incorporation governs shareholder derivative litigation).

[19] We do not opine as to the Shareholders' derivative rights in Maryland; their rights in Maryland are not before this Court.

to conclude that both plaintiffs allege a financial injury sufficient to confer constitutional standing to sue.[20]

## III

We next turn to the independent question of whether the Shareholders possess the capacity to sue the Advisors.[21] The Advisors filed a verified plea in abatement, which is a proper way to challenge capacity.[22]

To answer the capacity question, we examine whether the Shareholders are entitled to recover damages individually based on breaches of the advisory agreement and the attendant duties it creates. The Advisors argue that the Shareholders lack the capacity to sue individually because the Shareholders cannot establish a personal cause of action or personal injury based on the advisory agreement. In the Advisors' view, the agreement benefited the Trust and its shareholders collectively, but the agreement did not confer a benefit on any individual shareholder. The Shareholders respond that the agreement creates a duty to each individual shareholder, not just to the Trust and the shareholders collectively. Alternatively, the Shareholders argue that they are third party beneficiaries of the advisory agreement.

---

[20] *Pike*, 610 S.W.3d at 778.

[21] *See id.* at 775 (distinguishing capacity from constitutional standing).

[22] *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 853 n.7 (Tex. 2005); Tex. R. Civ. P. 93(2) (requiring a verified plea to assert "[t]hat the plaintiff is not entitled to recover in the capacity in which he sues"). We review capacity questions de novo. *See Austin Nursing Ctr.*, 171 S.W.3d at 848 (explaining that capacity is a procedural issue concerning a party's legal authority to sue or be sued).

8

## A

We first consider the Shareholders' assertion that the advisory agreement confers a direct cause of action to each individual shareholder. A shareholder generally "cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong."[23] Accordingly, suits for injuries to a corporation—including claims for diminution in stock value—ordinarily must be brought by the corporation itself or derivatively on its behalf.[24] This default rule embodies "the principle that where such an injury occurs[,] each shareholder suffers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer."[25]

A shareholder may individually sue for a violation of a duty owed directly to that shareholder.[26] Such a duty must exist separate and apart from a duty to the corporate entity.[27] "[T]o recover individually, a stockholder must prove a personal cause of action and personal injury."[28] The shareholder thus must suffer disparately from "injury to the

---

[23] *Pike*, 610 S.W.3d at 775 (quoting *Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990)).

[24] *Wingate*, 795 S.W.2d at 719 (citing *Davis*, 168 S.W.2d at 221).

[25] *Id.* (quoting *Davis*, 168 S.W.2d at 221).

[26] *Id.*

[27] *Id.*

[28] *Pike*, 610 S.W.3d at 775 (quoting *Wingate*, 795 S.W.2d at 719).

9

property of a corporation, or the impairment or destruction of its business, [which] is vested in the corporation."[29]

The provision at issue states that the advisor "shall be deemed to be in a fiduciary relationship to the Trust and its Shareholders." "Shareholders" is defined as "record holders of the Shares as maintained in the books and records of the Trust or its transfer agent."

The Shareholders rely on the phrase "the Trust and its Shareholders" to claim that the agreement created contractual fiduciary duties to each individual shareholder. The Advisors respond that "the Trust and its Shareholders," in context, reflects a bedrock principle of corporate law: fiduciary duties flow to a corporation and its shareholders collectively, not to shareholders individually. The Advisors further argue that implying individual fiduciary duties to thousands of shareholders is incompatible with duties owed to the Trust and its shareholders collectively.

We conclude that the phrase "and its Shareholders" refers to the Trust's shareholders collectively. The Trust executed the agreement, acting on behalf of its shareholders. No shareholder separately signed the agreement, much less in an individual capacity. Absent an express undertaking to an individual shareholder, fiduciary duties generally flow to the corporation and its shareholders collectively, not to any particular shareholder.[30]

---

[29] *Davis*, 168 S.W.2d at 221.

[30] *See In re Est. of Poe*, 648 S.W.3d 277, 288–89 (Tex. 2022) (citing *Ritchie v. Rupe*, 443 S.W.3d 856, 888–89 (Tex. 2014)).

The principle of shareholder collectivity overcomes the "incompatible" nature of simultaneous duties owed to a corporation and duties owed to a particular shareholder, whose interests may not align with the corporate entity as a whole.[31] In recognition of this tension, we have held that "a director cannot simultaneously owe these two potentially conflicting duties."[32] Although a party might agree to undertake a duty to both a corporate entity and one or more of its shareholders—as may be the case for mutual shareholder agreements in closely held corporations—such an agreement should not be inferred without an express recognition of the shareholder as a party to the contract in its individual capacity. Absent indicia of mutual assent to undertake a duty to an individual, we read the relationship created by the Trust and the third party as intended to benefit the Trust's shareholders collectively through the Trust itself.

The Shareholders' contrary interpretation of the advisory agreement would confer conflicting duties on an advisor responsible for managing the Trust's investments and daily operations[33]—an unworkable result we decline to imply when individual shareholders are not signatories to the agreement. The intermediate court decisions that the Shareholders cite, *Allen v. Devon Energy Holdings, L.L.C.*,[34] and

---

[31] *Id.* at 288.

[32] *Id.*

[33] *See id.* at 287–88.

[34] 367 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.).

*Strebel v. Wimberly*,[35] are inapposite. Unlike the advisory agreement in this case, the agreements in those cases conferred mutual rights and obligations between members of closely held limited liability companies who were parties to the agreements at issue and directly benefitted from them.[36] In this case, in contrast, the Shareholders are not parties to the advisory agreement. Further, the declaration of trust expressly provides that the Shareholders "have no interest in the assets of the Trust" and "shall have no right to compel any partition, division, dividend or Distribution of the Trust or of its assets," disavowing any Shareholder intent to obtain a direct benefit through the Trust's contractual undertakings.

## B

The Shareholders alternatively argue that the advisory agreement confers third-party beneficiary status to the Trust's shareholders, affording each shareholder a direct cause of action. This claim proves too much. A shareholder is an intended beneficiary of any contract a corporate entity undertakes, but only in the collective sense. Absent terms that unequivocally express the parties' intent to confer

---

[35] 371 S.W.3d 267 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

[36] *See id.* at 277–78 (interpreting "the Managers shall have fiduciary duties to the Company and the Members" in an LLC agreement as creating duties members owe other members individually); *Allen*, 367 S.W.3d at 396–97 (same with regards to "duty of loyalty to [the company] or its members"); *see also* Tex. Bus. Orgs. Code § 101.052(g) (stating that "[a] member or manager of a limited liability company . . . is bound by the company agreement, regardless of whether" they sign it).

third-party beneficiary status on thousands of individual shareholders, we decline to imply such status.[37]

Texas law outside the shareholder context yields the same conclusion. Generally, "the benefits and burdens of a contract belong solely to the contracting parties."[38] Thus, Texas law features a "presumption against, not in favor of, third-party beneficiary agreements."[39] Overcoming the presumption requires more than showing that contracting parties knew the third party would benefit or that the third party intended or expected to benefit.[40] The parties' intent to confer a direct benefit on a third party "must be clearly and fully spelled out" in the contract.[41] When "the contract's language leaves any doubt about the parties' intent, those 'doubts must be resolved against conferring third-party beneficiary status.'"[42] No one disputes that the Trust's shareholders stood to indirectly benefit from the investment and

---

[37] *See Basic Cap. Mgmt., Inc. v. Dynex Com., Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) ("A court will not create a third party beneficiary contract by implication.").

[38] *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (citing *House v. Hou. Waterworks Co.*, 31 S.W. 179, 179 (Tex. 1895)).

[39] *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999) (citations omitted).

[40] *First Bank*, 519 S.W.3d at 102.

[41] *MCI Telecomms.*, 995 S.W.2d at 651.

[42] *First Bank*, 519 S.W.3d at 103 (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)).

13

management services provided pursuant to the agreement, but an indirect benefit "is not enough."[43]

Because the Shareholders lack the capacity to sue for the claims they bring through the advisory agreement, we hold the trial court erred in denying the Advisors' plea in abatement.[44]

## III

Mandamus relief is appropriate when (1) a trial court errs in a matter of law and (2) the aggrieved party lacks an adequate remedy by appeal.[45] Courts do not issue relief merely to avoid some "expense or delay" associated with appellate relief.[46] Relief may be warranted, however, when an appeal would amount to an "irreversible waste of judicial and public resources."[47] In this case, the question is not merely one of capacity, but also one of forum. As we have held, the Shareholders' claims sound derivatively, not individually. Under the Trust agreement, derivative claims must be brought in Maryland according to Maryland law.

---

[43] *Id.* at 102.

[44] Because the Shareholders lack a personal cause of action, we need not decide whether the Shareholders have a personal injury. *See Wingate*, 795 S.W.2d at 719 ("[T]o recover individually, a stockholder must prove a personal cause of action and personal injury.").

[45] Trial courts have "no 'discretion' in determining what the law is or applying the law to the facts." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

[46] *Id.* at 136 (quoting *Walker*, 827 S.W.2d at 842).

[47] *Id.* at 137 (quoting *In re Masonite Corp.*, 997 S.W.2d 194, 198 (Tex. 1999)).

We have granted relief to enforce forum selection clauses when proceeding in the incorrect forum would result in "a meaningless waste of judicial resources."[48] Proceeding in the wrong forum "inject[s] inefficiency by enabling forum-shopping, wasting judicial resources, delaying adjudication on the merits, and skewing settlement dynamics."[49] Forcing the Shareholders' action to proceed presents the same hazards. Additionally, third parties depend on the corporate framework to ensure they are doing business with an entity "run by its board of directors" in procedurally predictable ways without risk of exposure to suits brought by shareholders who attempt to bypass statutory safeguards by bringing derivative claims directly.[50]

Additional proceedings in Texas would result in an "'unnecessary waste of economic and judicial resources' as the case is tried in the wrong court."[51] We hold that the Advisors lack an adequate remedy by appeal and are entitled to relief. The defect in capacity is incurable, insofar as the litigation in Texas improperly seeks derivative relief through

---

[48] *In re AIU Ins. Co.*, 148 S.W.3d 109, 118 (Tex. 2004); *see also In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010) (collecting cases).

[49] *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436–37 (Tex. 2017) (quoting *In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 (Tex. 2010)).

[50] *In re Schmitz*, 285 S.W.3d 451, 459 (Tex. 2009) (citing *Kamen*, 500 U.S. at 101 (explaining that the demand requirement for derivative actions "was adopted to preserve the principle that a corporation should be run by its board of directors, not a disgruntled shareholder or the courts")).

[51] *In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 298–99 (Tex. 2016) (quoting *Coastal Oil & Gas Corp. v. Flores*, 908 S.W.2d 517, 518 (Tex. App.—San Antonio 1995, orig. proceeding)).

individual causes of action.[52] The trial court therefore erred in failing to dismiss the Shareholders' suit with prejudice.

*    *    *

The advisory agreement benefits the Trust's shareholders collectively. The Trust is charged with enforcing those rights. Individual shareholders may demand that the Trust undertake such enforcement via a derivative action on behalf of the Trust. The advisory agreement, however, does not confer individual rights upon Trust shareholders to sue the Advisors directly.

Because the Shareholders lack the capacity to bring the claims they assert, we conditionally grant mandamus relief. We direct the trial court to vacate its order denying the Advisors' plea in abatement, grant the plea, and dismiss the case with prejudice. We are confident that the trial court will comply with our order; the writ will issue only if it does not.

Jane N. Bland
Justice

**OPINION DELIVERED:** November 14, 2025

---

[52] *See Curtis v. Gibbs*, 511 S.W.2d 263, 267–68 (Tex. 1974) (directing a judge to sustain a plea in abatement and dismiss where the court erred in denying a plea in abatement); *see also Mower v. Boyer*, 811 S.W.2d 560, 563 n.2 (Tex. 1991) (stating that a suit filed subsequent to a suit in another court with dominant jurisdiction must be dismissed if a party to the subsequent suit challenges it through a plea in abatement).