**David Ronald MACIAS, Appellant,**

v.

**Carole Keeton RYLANDER in her Official Capacity as Comptroller of Public Accounts of the State of Texas, Appellee.**

**No. 03–00–00432–CV.**

Court of Appeals of Texas, Austin.

Feb. 28, 2001.

---

1. Because of our disposition, we need not discuss the contents of Hill's motion for re-

hearing.

Cynthia S. Anderson, Kemp Smith, P.C., El Paso, for Appellant.

Christopher S. Jackson, Asst. Atty. Gen., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

ABOUSSIE, Chief Justice.

Appellant David Ronald Macias appeals (1) the district court's order granting partial summary judgment in favor of Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas (the "Comptroller"), finding that good cause exists to suspend Macias's customs broker's license and denying Macias's request for declaratory relief, and (2) the final judgment signed by the court rendering judgment and suspending Macias's license for ninety days. We will affirm the judgment of the district court.

## BACKGROUND

Pursuant to the United States Constitution and the Texas Tax Code, tangible personal property otherwise subject to sales tax imposed by the State is exempted from that tax if the property is exported outside of the United States. *See* U.S.

Const. art. I, § 10, cl. 2; Tex. Tax Code Ann. § 151.307(a) (West Supp.2001). To claim such an exemption, a claimant must provide proof of export. Tex. Tax Code Ann. § 151.307(b). One way to prove exportation is by documentation issued by a customs broker licensed by the Comptroller, or by an authorized, licensed employee of a customs broker, bearing the appropriate export stamp and certifying that delivery of such property was made to a point beyond the territorial limits of the United States. *Id.* § 151.307(b)(2)(A)-(C). Such documents are commonly referred to as "export certificates."

As a licensed customs broker, David Ronald Macias and those under his authority are authorized to issue export certificates. On March 11, 1995, Carolina Ramirez de Salinas, a Mexican citizen, purchased several items of clothing from a Marshall Field's store in San Antonio. That same afternoon, Ramirez sought an export certificate for those items from Victor Garcia, an employee of Macias. Garcia issued a stamped export certificate to Ramirez that afternoon. The certificate stated the date of export as March 11, 1995; the time of export as 2:30 p.m; and the place of export as Hidalgo, Texas. After obtaining the export certificate, Ramirez returned to Marshall Field's and used the certificate to claim a sales-tax exemption and receive a refund of the sales tax previously paid on her purchases. Ramirez did not take the merchandise from the United States to Mexico until March 13, 1995, at approximately 3:30 p.m.

Based on these events, the Comptroller notified Macias of a proposed 120–day suspension of his customs broker's license for "good cause." *See id.* § 157.157(f) (West Supp.2001) (stating that Comptroller may suspend customs broker's license for good cause); 34 Tex. Admin.Code § 3.360(n)(3)

(2000) (listing acts or omissions of licensed customs broker that constitute good cause for suspension). Macias requested an administrative hearing to contest the suspension of his license. *See* Tex. Tax Code Ann. § 151.157(f).

Following a hearing, the administrative law judge ("ALJ") issued a proposed decision, finding that Macias had violated section 151.307(b) of the Tax Code and Comptroller rules 3.360(n)(3)(C) (delivering export certification if all or portion of property described thereon was not actually exported at time and place on date reflected on certification form constitutes cause for suspension) and 3.360(n)(3)(K) (failing to exercise responsible supervision and control over conduct of export certification business, including inadequate supervision of employees, constitutes good cause for suspension). *See id.* § 151.307(b); 34 Tex. Admin.Code § 3.360(n)(3)(C), (n)(3)(K). The ALJ also recommended that the 120-day suspension of Macias's license be probated and effective for only 60 days. The Comptroller, however, ordered Macias's license be suspended for 120 days without probation.

Macias brought suit in district court, seeking judicial review of the Comptroller's order and a declaratory judgment that his license should not be suspended because his issuance of the export certificate to Ramirez was proper. The Comptroller moved for summary judgment. The district court granted the Comptroller's motion for summary judgment, finding that the Comptroller's order suspending Macias's license was based on good cause, affirmed the 120–day suspension, and denied Macias's request for declaratory relief. Macias then appealed to this Court. On appeal, this Court held that the district court erred in conducting a substantial evidence review of the Comptroller's order and remanded the case to the

district court for consideration by trial *de novo. See Macias v. Rylander*, 995 S.W.2d 829, 833 (Tex.App.—Austin 1999, no pet.).

On remand, the Comptroller moved for partial summary judgment on the grounds that (1) good cause exists to suspend Macias's customs broker's license, and (2) Macias's request for declaratory relief should be denied. The district court granted the Comptroller's motion and after a bench trial, signed a final judgment rendering judgment and assessing a ninety-day suspension of Macias's license. Macias appeals this final judgment.

## DISCUSSION

### Standard of Review

■■■ Because the propriety of a summary judgment is a question of law, we review the district court's decision *de novo. Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex.App.—Austin 1999, no pet.). We will affirm the summary judgment on appeal if any ground asserted in the motion for summary judgment is a valid ground for rendering summary judgment. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996). In its motion for partial summary judgment, the Comptroller asserted that good cause exists to suspend Macias's license because Macias violated the Comptroller's rules regulating customs brokers by (1) improperly certifying goods as having been exported, (2) delivering a false export certification, and (3) failing to properly supervise and control his export certification business. Our analysis begins with a review of the export certificate at issue.

### Export Certification

■■■ Customs brokers are licensed by the Comptroller's office pursuant to the provisions of section 151.157 of the Tax Code. *See* Tex. Tax Code Ann. § 151.157. The pertinent part of that section provides as follows:

> A customs broker, or an authorized employee of a customs broker, licensed by the comptroller under this section may issue documentation for the purpose of showing the exemption of tangible personal property under Section 151.307(b)(2) *only under procedures established by the comptroller by rule.*

*Id.* § 151.157(a) (emphasis added). In recognition of section 151.157, the Comptroller has adopted rules that specify procedures for the licensing of customs brokers. Comptroller's rule 3.360(m), titled, "Export certification form and contents," states that "an export certification *must*, at a minimum, reflect . . . the date of sale, date and time the property was exported, and exact location (e.g., the bridge or airport) where the property was exported." 34 Tex. Admin. Code § 3.360(m)(4) (2000) (emphasis added). The word "must" is mandatory in effect and should generally be construed accordingly. *Sanders v. Shelton*, 970 S.W.2d 721, 730 (Tex.App.—Austin 1998, pet. denied). Thus, a valid export certificate requires, among other information, the date, time, and place the property was exported; without such information, a certificate does not comply with the Comptroller's rules and is therefore invalid.

■■■ Both parties agree that goods become exempt from state sales tax as exports when they enter the export stream of commerce under the "stream of export" doctrine. "Under this doctrine, goods are not subject to state taxation once exportation has commenced, which occurs when goods 'have been shipped, or entered with a common carrier for transportation, to another state, or have been started upon such transportation in a continuous route

or journey.'" *Virginia Indonesia Co. v. Harris County Appraisal Dist.,* 910 S.W.2d 905, 908 (Tex.1995) (citing *Coe v. Errol,* 116 U.S. 517, 527, 6 S.Ct. 475, 29 L.Ed. 715 (1886)). The "export stream" is defined as the final, continuous journey out of the country, and tax immunity attaches as soon as the journey begins. *Department of Revenue v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 752, 98 S.Ct. 1388, 55 L.Ed.2d 682 (1978). It is not enough that on the tax date there is a purpose and plan to export the property. *See Empresa Siderurgica, S.A. v. County of Merced,* 337 U.S. 154, 157, 69 S.Ct. 995, 93 L.Ed. 1276 (1949). Nor is it sufficient that in due course the plan will be fully executed. *See id.* "It is the entrance of the articles into the export stream that marks the start of the process of exportation. Then there is certainty that the goods are headed for their foreign destination and will not be diverted to domestic use. Nothing else will suffice." *Id.*

▪ Macias contends that the district court erred in granting partial summary judgment because the export certificate issued to Ramirez is accurate and valid. Macias argues that the merchandise at issue entered the stream of export at the time Ramirez purchased it and was therefore an "export" at the date, time, and place reflected on the export certificate. We thus are called upon to determine whether the merchandise was "exported" at the date, time, and place reflected on the export certificate.[1] Macias argues as follows:

> If the Merchandise is tax *exempt,* the tax *did not accrue* at the time of purchase. If the tax did not accrue at the time of purchase, as a matter of law, the

Merchandise was in the export stream of commerce and therefore an export at the time of purchase.

Adhering to the notion that the merchandise entered the export stream of commerce at the time of purchase, Macias further argues that it traveled in the export stream until it crossed the Mexican border. Thus, any date, time, and place listed between the point of purchase and the point at which the merchandise eventually crossed the border would be the correct date, time, and place of export.

▪ A basic premise of Macias's syllogism, however, is flawed. Macias asserts that if merchandise is tax exempt, sales tax simply never accrued on the sale. This reasoning misconstrues the nature of the exemption. "A tax is imposed on each sale of a taxable item in this state." Tex. Tax Code Ann. § 151.051 (West 1992). Said another way, tax *accrues* at the time of sale. Thus, at the time Ramirez purchased the merchandise, the transaction was subject to Texas sales tax *unless* she qualified for an exemption *at that time,* for "[t]he exemption attaches to the *export* and not to the article *before its exportation.*" *Richfield Oil Corp. v. State Bd. of Equalization,* 329 U.S. 69, 80, 67 S.Ct. 156, 91 L.Ed. 80 (1946) (emphasis added). When an exemption from state sales tax is claimed because merchandise is exported outside the United States, proof of export must be shown. Tex. Tax Code Ann. § 151.307(b). Thus, while state taxes initially accrue on the merchandise, they "are not subject to state taxation *once* exportation has commenced." *Virginia Indonesia Co.,* 910 S.W.2d at 908 (emphasis added). Generally then, tax accrues at the point of sale, and the export exemption subse-

---

[1]. We note that we are not undertaking a factual determination of when the goods were actually exported; rather we are determining only whether the merchandise was exported at the date, time, and place reflected on the export certificate, namely March 11, 1995; 2:30 p.m.; Hidalgo, Texas.

quently acts to exempt the merchandise from the tax.

There are circumstances in which merchandise *can* qualify for an exemption as an export at the time of purchase. In support of his argument that Ramirez's merchandise was an export at the time of purchase, Macias relies on *Virginia Indonesia Co.*, in which the Texas Supreme Court addressed the question of "whether [the petitioner's] goods were in the export stream of commerce when the tax was assessed." *Id.* at 912. The petitioner, the Virginia Indonesia Company ("VICO"), had purchased goods from vendors throughout the United States on behalf of an Indonesian joint venture using a purchase order that committed the goods to foreign export; the goods were transported from the vendors directly to an independent export packer in Houston, and ultimately shipped to Indonesia. The supreme court determined that "VICO's goods entered the export stream of commerce when they were shipped from the vendors to the export packer's facility in Harris County because, at that point, the goods began their movement to a precommitted foreign destination." *Id.*

Also cited in *Virginia Indonesia Co.* is *A.G. Spalding & Bros. v. Edwards*, in which the United States Supreme Court addressed the question of whether the sale of merchandise was itself "a step in exportation." *A.G. Spalding & Bros. v. Edwards*, 262 U.S. 66, 68–69, 43 S.Ct. 485, 67 L.Ed. 865 (1923). In *A.G. Spalding & Bros.*, a Venezuelan firm ordered a New York commission house to buy merchandise for export to Venezuela; the New York commission house placed the order with the manufacturer with simultaneous instructions to deliver the packages to an export carrier. The Court, striving to "fix a point at which, in the view of the purpose of the Constitution, the export must be

said to begin," concluded that "[t]he very act that passed the title ... committed the goods to the carrier that was to take them across the sea, for the purpose of export and with the direction to the foreign port upon the goods." *Id.* at 69, 43 S.Ct. 485. Thus, the merchandise in both *Virginia Indonesia Co.* and *A.G. Spalding & Bros.* was an "export" and became exempt from tax at or very near the moment of purchase because, at the point of sale, an unequivocal certainty of export attached.

Here, however, the certainty of export required for entry into the stream of export did not attach to Ramirez's merchandise at the point of purchase when the sales tax was imposed. At the time of purchase, the merchandise remained in the United States and in the hands of Ramirez; the merchandise was never delivered to an independent party for export. Instead, Ramirez herself took the merchandise from the United States to Mexico two days after the purchase, on March 13. It is not enough that on March 11, 1995, Ramirez had a plan or purpose to export the merchandise. *See Empresa Siderurgica*, 337 U.S. at 157, 69 S.Ct. 995. Nor is it enough that in due course the plan was fully executed and the merchandise was ultimately exported into Mexico. In the interim, the merchandise might still have been diverted into the domestic market. *Id.* At the time of purchase, the goods had not entered the stream of export and the process of exportation had thus not begun. While we need not here determine the exact time the merchandise at issue was definitively exported, we conclude that on the facts shown here, it was not exported at or shortly after being purchased, as is reflected on the export certificate.

■ Because the export certificate does not reflect the accurate date, time, and exact location the property was exported, the certificate violates the Comp-

troller's rules. *See* 34 Tex. Admin.Code § 3.360(m)(4). Macias maintains that we cannot question the validity of the export certificate because we are statutorily precluded from doing so based on section 151.307(c) of the Tax Code, which states as follows:

> Documentation, including the stamp affixed to the documentation, that is provided by a customs broker licensed by the comptroller under section 151.157 is presumed valid in the absence of clear and convincing evidence that the tangible personal property covered by the documentation was not exported outside the territorial limits of the United States.

Tex. Tax Code Ann. § 151.307(c). Macias argues that this provision, coupled with the Comptroller's stipulation that the merchandise Ramirez purchased was eventually exported to Mexico, precludes summary judgment on any ground challenging the validity of the export certificate. Macias's interpretation of this provision, however, leads to an absurd result. Under his reasoning, any export certificate, even a patently false and misleading one, could never be challenged on summary judgment if the merchandise described therein eventually left the country.

In construing a statute, we generally look to the plain language of the law; nevertheless, the plain-meaning rule is subject to exceptions. *Southwestern Bell Tel. Co. v. Public Util. Comm'n,* 888 S.W.2d 921, 927 (Tex.App.—Austin 1994, writ denied). In interpreting statutes, we should not "attribute to the Legislature an intention to work an injustice" or produce an absurd or unreasonable result. *State v. Mauritz–Wells Co.,* 141 Tex. 634, 175 S.W.2d 238, 242 (1943); *accord Southwestern Bell Tel. Co.,* 888 S.W.2d at 927.

Section 151.307(c) of the Texas Tax Code should be read together with Comptroller's rule 3.360(n)(3)(C), which states that "delivering to any person a signed and/or stamped export certification form if all or a portion of the property described thereon was not actually exported at the time and place and on the date reflected on the certification form" constitutes good cause for suspension. 34 Tex. Admin. Code § 3.360(n)(3)(C). Having determined that the merchandise was not exported at the date, time, and place reflected on the certificate, we hold that good cause exists to suspend Macias's license. Where, as here, the district court does not specify the grounds for its granting of a movant's motion for summary judgment, we may affirm the judgment if any of the grounds advanced within the motion are meritorious. *State Farm Fire & Cas. Co. v. S.S. & G.W.,* 858 S.W.2d 374, 380 (Tex.1993). Because we determine that good cause exists for suspending Macias's license based on Comptroller's rule 3.360(n)(3)(C), we affirm the summary judgment on that ground.

### Suspension Period

The Comptroller may suspend a license, after notice and hearing, for no fewer than 60 days and no more than 120 days if the broker's license has not been previously suspended or revoked. 34 Tex. Admin.Code § 3.360(n)(4) (2000). The Comptroller requested that the district court find that Macias's license should be suspended for ninety days, and the court so found. Because good cause exists for suspending Macias's license, the district court did not abuse its discretion in assessing a ninety-day suspension, which is within the range for a first time offense.

### CONCLUSION

Because good cause exists for suspending Macais's license and the district court did not abuse its discretion by assessing a

ninety-day suspension period, we affirm the district court's judgment.