Wind Point Partners VII-A, L.P. v Hoya Corp. (2020 NY Slip Op 03977)





Wind Point Partners VII-A, L.P. v Hoya Corp.


2020 NY Slip Op 03977


Decided on July 16, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 16, 2020

Manzanet-Daniels, J.P., Mazzarelli, Gesmer, Moulton, JJ.


653955/18 11450 654666/18 11449

[*1] Wind Point Partners VII-A, L.P., Plaintiff-Respondent,
v
Hoya Corporation, Defendant-Appellant.


Locke Lord LLP, New York (R. James DeRose, III of counsel), for appellant.
White & Case LLP, New York (Joshua A. Berman of counsel), for respondent.



Order and judgment (one paper), Supreme Court, New York County (Jennifer G. Schecter, J.), entered December 22, 2018, which granted plaintiff's motion to dismiss defendant's counterclaim pursuant to CPLR 3211 and declared, in essence, that $22,380,660 of the amount sought in defendant's June 15, 2018 letter could not be part of a valid escrow claim, unanimously affirmed, without costs. Order, same court and Justice, entered April 9, 2019, which declared that $23,920,174 must be released from the escrow account established by the parties' contract, unanimously reversed, on the law, without costs.
Read in light of the contract as a whole (see e.g. Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]), section 10.01(a) unambiguously sets forth the parties' intention to shorten the period within which defendant could sue for the breach of certain representations and warranties to less than the statutory six years (see CPLR 213[2]) from date of breach. A comparison of that section with section 10.01(b) shows that defendant had to file a claim in court, as opposed to sending a written notice to plaintiff, by June 15, 2018.
The court correctly declared in plaintiff's favor in index No. 653955/18, despite defendant's affirmative defenses of ratification, waiver, and estoppel. Ratification is inapplicable because plaintiff is not trying to repudiate the contract (see Allen v Riese Org., Inc., 106 AD3d 514, 517 [1st Dept 2013]). Waiver is unavailing because the contract provides that a waiver requires a signed writing (see Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y., 61 NY2d 442, 446 [1984]), and there is no writing signed by plaintiff waiving the June 15, 2018 deadline. Estoppel is unavailing because, on June 26, 2018, when plaintiff told defendant that it was considering defendant's claims and its own response, the representations and warranties at issue in index No. 653955/18 had already expired; hence, defendant was not prejudiced by the fact that plaintiff seemed to want to engage in negotiations (see Lynn v Lynn, 302 NY 193, 205 [1951], cert denied 342 US 849 [1951]).
In index No. 654666/18, the bulk of the disputed escrow claim ($20,645,000 of $23,920,174) pertains to sales and use taxes in 11 states. Plaintiff contends that Vision Ease (one of the companies sold to defendant) is a business-to-business operation and therefore cannot owe sales taxes. However, plaintiff did not argue this before Supreme Court, and it fails to provide any citations to the record supporting its contention. This may be a valid argument, but it does not warrant granting a CPLR 3211 motion.
To keep funds in escrow past August 2018, defendant had to make a good-faith claim that it was entitled to funds to satisfy the indemnification obligations of the sellers of Performance Optics and its subsidiaries. We cannot conclude, on plaintiff's motion to dismiss defendant's counterclaim, that defendant failed to make a good-faith claim as to the putative categories of pre-closing tax liabilities set forth in its letter to plaintiff dated August 7, 2018. The parties' agreement defines "Taxes" as "taxes . . . imposed by any government or taxing authority" (emphasis added). However, section 8.01(a) states that the sellers of Performance Optics "agree [*2]to indemnify [defendant]
. . . against the following Taxes and . . . against any Loss incurred in contesting or otherwise in connection with any such Taxes . . .: (i) Taxes imposed on or payable by the Company, any Subsidiary or AcquisitionCorp for any taxable period that ends on or before the Closing Date" (emphasis added). By contrast, other subsections — ii and vii — mention only taxes imposed on the Company, any Subsidiary, or AcquisitionCorp. Thus, "or payable by" must have some meaning; it is not mere surplusage. Taxes can be payable even if a state does not send a demand for payment (see e.g. United States v Associated Developers of Fla., Inc., 400 So 2d 17, 18 [Fla App 1980]; Pierce v Pacini, 127 Ill App 2d 1, 8, 261 NE2d 515, 518 [1970]; Central Credit Union v Comptroller of Treasury, 243 Md 175, 183, 220 A2d 568, 572 [1966]; Liberty Steel Co. v Oklahoma Tax Commn., 554 P2d 8, 10-11 [Okla 1976]; Macias v Rylander, 40 SW3d 679, 684 [Tex App 2001]). This concept also applies to federal income taxes (see United States v Regan, 713 F Supp 629, 633 [SD NY 1989]). Finally, defendant's reliance on its tax advisor is evidence of good faith (see Estate of Thompson v Commissioner of Internal Revenue, 370 Fed Appx 141, 144 [2d Cir 2010]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 16, 2020
CLERK