# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00014-CV

**Dunster Live, LLC, Appellant**

**v.**

**Lonestar Logos Management Company, LLC individually and d/b/a Lonestar Media Group; Media Choice, LLC; Curtis E. Ford; Vincent Hazen; Johnston Media, LLC; Matthew C. Johnston; and J. Andrew Cartwright, Appellees**

### FROM THE 98TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-001121, THE HONORABLE TIM SULAK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Dunster Live, LLC (Dunster) appeals from the trial court's final judgment dismissing all of Dunster's claims against appellees LoneStar Logos Management Company, LLC; Media Choice, LLC; Curtis E. Ford; Vincent Hazen; J. Andrew Cartwright; Matthew C. Johnston; and Johnston Media, LLC (collectively, appellees). Dunster challenges three rulings on appeal, which culminated into the final judgment: (1) the trial court's order granting partial summary judgment on Dunster's shareholder derivative claims, (2) the trial court's order granting partial summary judgment on Dunster's direct claims, and (3) the trial court's order denying Dunster's motion for new trial. For the following reasons, we affirm.

**BACKGROUND**

LoneStar Logo & Signs, LLC (LoneStar Logo) was created by Media Choice, LLC and Quorum Media Group, LLC in 2006 for the purpose of operating the Texas Department of Transportation's (TxDOT) "logo program." TxDOT's logo program includes the oversight of blue signs that precede highway exits that inform drivers of nearby businesses such as gas stations, restaurants, and hotels. In 2006, Media Choice, LLC and Quorum Media Group, LLC bid together, and won, the logo program for a five-year contract to run from January 1, 2007 to December 31, 2011. The contract also provided, contingent upon TxDOT's approval, an opportunity for an extended five-year term that would run from December 31, 2011 to December 31, 2016. LoneStar Logo was created for the sole purpose of serving as the operator of the logo program for the entire duration of the contract (2007–2016). Although LoneStar Logo managed the program, LoneStar Logo itself was not the "vendor" and had no contract with TxDOT. LoneStar Logo's initial management agreement provided that its corporate existence was to terminate "immediately" upon the end of the 2007–2016 contract.

Dunster was a Dallas-based investment vehicle created by Bill Dunlap and Kevin Lippincott. In 2010, three years after LoneStar Logo was formed, Dunster obtained a controlling interest in Quorom Media Group, which resulted in Dunster obtaining a 30 percent ownership interest in LoneStar Logo. After Dunster obtained this interest in Quorum Media Group, the ownership structure of LoneStar Logo was modified; Dunster held a 30 percent interest while Media Choice, LLC (controlled by Curtis Ford), Johnston Media, LLC (controlled by Matthew C. Johnston), J. Andrew Cartwright, and Vince Hazen held the remaining interests. Those four appellees were members of LoneStar Logo and Dunlap, Lippincott, Ford, Johnston,

Cartwright, and Hazen were appointed as managers who managed the day-to-day operations of LoneStar Logo.

LoneStar Logo's first company agreement was executed in 2006 by the original co-vendors. However, after Dunster gained its ownership interest in LoneStar Logo in 2011, the company agreement was revised to reflect the changes in ownership structure. This became known as the Revised Company Agreement (the Agreement). The terms of the Agreement were agreed upon by all parties. For purposes of this appeal, the relevant sections include Section 5.07 (Conflicts of Interest) and Section 3 (Capital Contributions and Failure to Contribute).

First, Section 5.07 of the Agreement expressly allowed members the right to compete against the others and against LoneStar Logo itself.

> **5.07 Conflicts of Interest.** Each Manager, Member and officer of the Company at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the company or any other Member, Manager or officer the right to participate.

Next, Section 3 of the Agreement provided that all members would be subject to capital calls, and that failure to timely meet a capital call would result in an immediate redemption of that member's share:

> **3.03 Failure to Contribute.** If a Member fails to make such Member's additional Capital Contribution under Section 3.02 in accordance with the notice sent by the Managers, the Company shall have the option to redeem such Member's Membership Interest for the outstanding value of such Member's Capital Contributions, if any. If such additional Capital Contributions are not received by the Company within the time period set forth in the Managers' notice with respect to the additional Capital Contributions, the Company is entitled to exercise this redemption option by serving written notice

3

upon such Member. The redemption option may be exercised by the action of any single Manager, without the need for a vote. The redemption will be effective upon written notice to the Non-Contributing Member and the redemption payment, if any, must be made to the Non-Contributing member within thirty (30) working days of the redemption notice. Effective immediately upon the notice of redemption: (i) the redeemed Membership Interest shall be terminated resulting in a pro rata increase of the ownership of the Company by the Contributing Members; and (ii) the Managers appointed by the redeemed Member shall be terminated.

In 2013, the members of LoneStar Logo were informed that their logo program contract would not be extended beyond 2016. Instead, TxDOT would host a new statewide bidding process for the next contract. Based on its previous actions, including allegedly failing to participate in day-to-day running of the logo program and failing to provide assistance to LoneStar Logo's business in general, the members did not wish to continue business with Dunster. Accordingly, the members and managers—without Dunster—formed a new company named LoneStar Logos Management Company, LLC (LoneStar Management) to bid on TxDOT's upcoming 2017–2026 contract. In the meantime, LoneStar Logo was set to terminate at the end of the 2007–2016 contract on December 21, 2016.

In early 2016, TxDOT awarded the 2017–2026 logo program contract to vendor Media Choice, LLC and LoneStar Management. Simultaneously, in early 2016, LoneStar Logo began preparing to close out its management of the logo program. Due to a "cash shortfall," a capital infusion was necessary to make up for the 2016 budget deficit. LoneStar Logo informed Dunster of these financial issues, and in March 2016 provided Dunster a "closeout forecast" that showed the expected budget deficit for that year. The next month, Dunster received notice of its share owed to LoneStar Logo.

4

The managers agreed at a meeting that LoneStar Logo's capital calls would be made monthly rather than all at once. They identified $700,000 in estimated refunds and credits that were to be paid out to participants in 2016. Dunster was among the members who were provided monthly financial statements and notices of each member's required capital contribution. These notifications occurred on a monthly basis from April 2016 to September 2016.[1]

Dunster received notice that its share of the capital call was due on October 12, 2016. Dunster did not meet that deadline. Therefore, the next day, pursuant to Section 3.03 of the Agreement, Dunster received an email from Curtis Ford notifying Dunster of the redemption of its membership interest. The day after the redemption, Dunster responded by sending $45,000 to LoneStar Logo, which was less than the required capital amount of $71,166. In response, LoneStar Logo returned the payment as untimely, explaining that Dunster's failure to meet its capital call requirement meant it had lost its membership interest per Section 3.03 of the Agreement. Dunster did not immediately follow up to explain its non-payment nor did it seek to undo the redemption.

**PROCEDURAL HISTORY**

This case began in federal court.[2] In advance of the January 1, 2017 commencement of the new TxDOT contract, Dunster brought suit in federal court seeking to enjoin LoneStar Management from performing the upcoming contract. Following a temporary injunction hearing in December 2016, the federal district court denied Dunster's temporary requested relief,

---

[1] The parties do not dispute that Dunster received timely notice of these requests for capital contributions.

[2] *See Dunster Live, LLC v. LoneStar Logos Mgmt. Co.*, No. A-16-CV-968-LY-ML, 2017 WL 11219769 (W.D. Tex. Aug. 8, 2017).

explicitly declining to find or conclude that Dunster had proven a substantial likelihood of success on the merits or any other required element. The court assumed for purposes of its analysis that Dunster had standing to pursue its derivative claims, albeit while terming the question "an issue of some concern to the court." Dunster thereafter moved for and obtained dismissal of its federal suit, following which it filed its present lawsuit in state court in March 2017.[3]

In the present case, Dunster sued appellees asserting direct claims and derivative claims on behalf of LoneStar Logo, including (1) breach of fiduciary duties, (2) aiding and abetting breach of fiduciary duties, (3) violations of the Texas Uniform Trade Secrets Act, (4) civil conspiracy, and (5) breach of contract. Dunster sought monetary and injunctive relief. These allegations were predominantly based on Dunster's allegations that LoneStar Logo issued improper capital calls and improperly redeemed Dunster's membership interests. Appellees moved for summary judgment on two grounds: first, they sought to establish as a matter of law that Dunster was no longer a member of LoneStar Logo in October 2016 because LoneStar Logo, through its managers, had already redeemed Dunster's interest after Dunster did not comply with timely capital call; and second, they sought to establish as a matter of law that Dunster's membership interests had obviated their standing to assert derivative claims on the entity's behalf. The trial court granted the motion as to Dunster's direct claims and denied it as to Dunster's derivative claims. In response, appellees sought a writ of mandamus in this Court, arguing that the trial court abused its discretion in failing to dismiss Dunster's derivative claims for lack of standing. *See In re LoneStar Logo & Signs, LLC*, 552 S.W.3d 342 (Tex. App.—Austin 2018, orig. proceeding). This Court granted the writ of mandamus, ordering the trial court to vacate the order

---

[3] Dunster asserted identical claims in both the federal suit and the present suit.

denying the motion for partial summary judgment and to grant summary judgment in favor of appellees thereby dismissing Dunster's derivative claims on behalf of LoneStar Logo for lack of standing. [4] *Id.* at 353. The cause was remanded and the trial court complied, entering summary judgment against Dunster's derivative claims on July 31, 2018. Dunster sought a writ of mandamus from this Court, seeking a determination that the redemption was void as a matter of law. This Court denied Dunster's petition for writ of mandamus. *See In re Dunster Live, LLC*, No. 03-18-00719-CV, 2018 WL 6187132, at *1 (Tex. App.—Austin Nov. 28, 2018, orig. proceeding) (mem. op.).

At this point, only Dunster's direct (i.e. non-derivative) claims remained pending before the trial court. Appellees moved for partial summary judgment on those direct claims, arguing that they owed no fiduciary duty to Dunster, and that even if they did, the summary

---

[4] We interpret this Court's decision in *LoneStar Logo* as holding that a former member of a corporation lacks standing to bring a derivative claim against the corporation. *See In re LoneStar Logo & Signs, LLC*, 552 S.W.3d 342, 353 (Tex. App.—Austin 2018, orig. proceeding). We read our opinion as taking no position as to whether the redemption of Dunster's membership interests was void under the Agreement, as this was not the specific portion of the district court's partial summary judgment order mandamused by relators. *Id.* at 346 ("Relators now seek mandamus relief from the portion of the district court's order that denied its second summary judgment ground."). We further elaborated:

> The district court's summary-judgment ruling encompassed the determinations that the movants had established the redemption and resultant loss of Dunster's member status as a matter of law and that Dunster had failed to raise any genuine issue of material fact regarding alleged breaches of fiduciary duty, lack of business justification, or other ground for invalidating or avoiding the legal consequences of the redemption. Similarly unavailing are protestations by Dunster that this summary-judgment ruling was merely 'interlocutory.' We do not understand Dunster to assail the merits of that ruling, only its finality.

*Id.* at 377 n. 14.

7

judgment evidence conclusively established that the company's agreement unambiguously authorized appellees' pursuit of separate business ventures. On October 9, 2018, the trial court denied this motion. Appellees sought partial summary judgment again, this time focusing on Dunster's failure to produce evidence of direct harm (as opposed to derivative harm allegedly suffered through LoneStar Logo). The trial court denied this motion on January 28, 2019.

The trial court scheduled a jury trial for May 6, 2019. During a pretrial hearing, Appellees re-urged their unsuccessful summary judgment arguments in the form of pretrial motions to exclude evidence. At the pretrial hearing, the trial court overturned the previous denials of summary judgment and orally granted appellees summary judgment as to all of Dunster's remaining claims.

Two years later, after years of various discovery disputes related to newly discovered evidence, the trial court entered its written, take-nothing final judgment against Dunster on October 12, 2021.[5] Dunster moved for a new trial, arguing appellees produced material evidence after summary judgment was complete and only after the trial court ordered them to do so. The trial court denied Dunster's motion for new trial. This appeal followed.

**DISCUSSION**

Dunster asserts nine issues on appeal. For efficiency, we have presented them as three issues with various subparts: (1) whether the trial court erred in dismissing Dunster's derivative claims by finding that Dunster's interests in LoneStar Logo were redeemed as a matter of law; (2) whether the trial court erred in granting summary judgment against Dunster's direct

---

[5] We discuss the reasons for the two-year delay between the trial court's oral entry of summary judgment and its entry of a final and appealable written order in our analysis of Dunster's third issue (whether the trial court abused its discretion in denying Dunster's motion for new trial).

8

claims based on breach of fiduciary duty; and (3) whether the trial court erred in denying Dunster's motion for new trial. Dunster seeks reversal on both orders granting partial summary judgment and on the trial court's order denying Dunster's motion for new trial. We discuss each issue in turn.

***Issue #1 – Dunster's derivative claims***

A party moving for traditional summary judgment has the burden to demonstrate that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). A party may obtain a no-evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Id.* R. 166a(i).

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). In reviewing summary judgment on appeal, we must take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). For both traditional and no-evidence motions, the court views the evidence in the light most favorable to the nonmovant. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

Dunster argues that the trial court erred in granting summary judgment to appellees on Dunster's derivative claims because the redemption of Dunster's membership interests was void. Specifically, Dunster argues the redemption was void because the members' option to

9

redeem was ineffective under the Agreement.[6]  Appellees respond that this Court, in our previous mandamus proceeding, has already ruled that it was an abuse of discretion for the trial court to allow Dunster's derivative claims to proceed since it lacked standing to bring them.  *See LoneStar Logo & Signs*, 552 S.W.3d at 353.  Appellees also argue that, in the event this Court revisits the issue of the validity of the redemption, it was not void because the Agreement unambiguously provides that a redemption is effective "immediately upon the notice of the redemption."

*Whether the redemption was void under the terms of the Agreement*

In support of its claim that the redemption was void, Dunster argues that appellees improperly modified the terms of the Agreement (specifically Section 3) by changing the required redemption payment to a different metric.  Specifically, it claims that LoneStar Logo incorrectly substituted Dunster's capital account balance for the contractually required consideration—the value of Dunster's Capital Contributions.[7]  Because appellees modified the terms of the option, Dunster claims, the exercise of the redemption legally operated as a rejection, and the option terminated.  Appellees counter that the amount of the redemption payment is irrelevant because the redemption itself, pursuant to the Agreement, was immediately effective upon written notice. We agree with appellees.

---

[6]  Dunster advances two other theories as to why the redemption was void, including that the members breached their fiduciary duties and that the members had an invalid business purpose in effectuating the redemption.  We find these theories unpersuasive based on the explanations provided in the latter portions of this memorandum opinion, in which we review the trial court's summary judgment on Dunster's direct claims.

[7]  Dunster claims that the outstanding value of Dunster's Capital Contributions was $181,500 but that appellees improperly changed it to "less than zero," thereby violating the Agreement and rendering the redemption ineffective.  Appellees counter that the redemption payment to Dunster (which they claim was instead, per the Agreement, the outstanding value of Dunster's Capital Contributions) was less than zero as a result of the 2016 October cash shortfall.

10

Shareholders of closely-held corporations may address and resolve difficulties in selling one's shares by entering into shareholder agreements that contain buy-sell, first refusal, or redemption provisions that reflect their mutual expectations and agreements. *Ritchie v. Rupe*, 443 S.W.3d 856, 871 (Tex. 2014). Here, neither party alleges that the terms of the Agreement are ambiguous, and we conclude that they are not. Accordingly, we restrict our analysis to the "plain language of the instrument to determine the rights, duties, and obligations of the parties." *Herring Bancorp, Inc. v. Mikkelsen*, 529 S.W.3d 216, 224 (Tex. App.—Amarillo 2017, pet. denied). Construction of an unambiguous contract is a question of law for an appellate court. *Anadarko Petroleum Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002).

Section 3.03 of the Agreement (Failure to Contribute) provides for the effect of a member to timely contribute to a capital call.

> If a Member fails to make such Member's additional Capital Contribution under Section 3.02 in accordance with the notice sent by the Managers**,** the Company shall have the option to redeem such Member's Membership Interest for the outstanding value of such Member's Capital Contributions, if any. *If such additional Capital Contributions are not received by the Company within the time period set forth in the Managers' notice with respect to the additional Capital Contributions, the Company is entitled to exercise this redemption option by serving written notice upon such Member.* The redemption option may be exercised by the action of any single Manager, without the need for a vote. *The redemption will be effective upon written notice to the Non-Contributing Member* and the redemption payment, if any, must be made to the Non-Contributing member within thirty (30) working days of the redemption notice. Effective immediately upon the notice of redemption: (i) the redeemed Membership Interest shall be terminated resulting in a pro rata increase of the ownership of the Company by the Contributing Members; and (ii) the Managers appointed by the redeemed Member shall be terminated.

(emphasis added). Here, the summary judgment evidence is undisputed that Dunster received timely notice of the September 2016 capital call and that Dunster failed to timely make the capital call within the required deadline of October 12, 2016, due to an error by its accountant. As a result, on October 13, 2016, manager Curtis Ford immediately emailed Dunster its notice to exercise redemption of its membership interests. Notably, Dunster did not, at that time, protest the amount included in the notice of the September capital call. Per the unambiguous terms of the Agreement, we conclude that the redemption was effective at that point. The managers exercised their right to make the capital call and to ultimately exercise their option to redeem Dunster's interest for failure to timely comply with said capital call. Accordingly, even viewing the evidence in the light most favorable to Dunster, as we must, *see Ford Motor Co.*, 135 S.W.3d at 601, we cannot conclude that a fact issue exists as to whether the redemption was void.[8]

***Whether the Zauber exception applies***

Texas courts, and this Court in particular, have previously and consistently held that a former member of a corporation lacks standing to bring a derivative claim against the corporation. *See LoneStar Logo*, 552 S.W.3d at 350 ("[A] fundamental and definitional attribute of a derivative action, as long known to Texas law (and more generally), is that the claimant possesses a present ownership interest in the entity on whose behalf it purports to sue, such that it has a stake in the outcome of those claims.") (cleaned up). The only carve-out to this rule is the

---

[8] Section 3.04 of the Agreement states that any "Capital Contributions" will not be returned. Instead, in the event of a redemption (Section 3.03), the member will be paid the "outstanding value" of those contributions at the time of the redemption. The redemption amount was not the "value" of capital contributions when earlier made, but the "outstanding value" at the time of the redemption. Due to LoneStar Logo's uncontroverted cash shortfall existing in October 2016, the "outstanding value of Dunster's Capital Contributions [was] less than zero," and therefore Dunster was not owed a redemption payment.

*Zauber* exception, which provides that the corporate transaction that caused the loss of ownership status can be deemed a nullity, and the plaintiff may proceed with its derivative claims, if (1) the plaintiff's stockholder status was involuntarily destroyed, and (2) there was no valid business purpose for the involuntary loss of membership status. *See Zauber v. Murray Sav. Ass'n*, 591 S.W.2d 932, 937–38 (Tex. App.—Dallas 1979, writ ref'd n.r.e., 601 S.W.2d 940 (Tex. 1980) (per curiam). The plaintiff moving to establish the exception has the burden to plead and prove both elements. *Id.*

We find nothing in the record to suggest that Dunster's failure to meet the capital call—and resulting immediate redemption of its membership interests—was outside of Dunster's control and therefore involuntary. To the contrary, the undisputed evidence shows that Dunster, like all of the LoneStar Logo members, had the opportunity to maintain its membership interest by paying the amount required under the September 2016 capital call. Dunster admits that its failure to do so was the result of its own accountant's error. Accordingly, we conclude Dunster has failed to meet its burden in proving that the *Zauber* exception applies. Because Dunster could not show the redemption was invalid and could not meet its burden in proving the *Zauber* exception, it ceased being a member of LoneStar Logo on October 13, 2016, and therefore lacked standing to bring its derivative suit. *See LoneStar Logo*, 552 S.W.3d at 350. We overrule Dunster's first issue.[9]

---

[9] Because we conclude that Dunster failed to prove the first element of the *Zauber* exception, we need not address the second element regarding whether the loss of membership status was the result of an improper business purpose. *See Zauber v. Murray Sav. Ass'n*, 591 S.W.2d 932, 937–38 (Tex. App.—Dallas 1979, writ ref'd n.r.e., 601 S.W.2d 940 (Tex. 1980) (per curiam); *see also* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

*Issue #2 – Dunster's direct claims for breach of fiduciary duty*

Dunster argues the trial court erred in granting appellees' motion for partial summary judgment as to Dunster's direct claims of breach of fiduciary duty. These claims were dismissed in the trial court's order on May 6, 2019.[10] Dunster claims appellees did not conclusively establish that they owed no fiduciary duty to Dunster, nor did they conclusively prove that the terms of the Agreement justified their creation of LoneStar Management.

Appellees respond that the grant of summary judgment on Dunster's direct claims should be affirmed for any one of the following reasons: (1) the Agreement allowed them to engage in business ventures outside the 2007–2016 contract, (2) Texas law does not impose fiduciary duties between members of a limited liability company, and (3) Dunster did not produce evidence of damages suffered in its individual (non-derivative) capacity. Because we find that appellees' second justification—regarding the existence of fiduciary duties—is dispositive of this issue, we address it first. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989) (explaining that summary judgment will be affirmed if any advanced theory is meritorious and trial court order does not specify the ground or grounds relied on for its ruling).

---

[10] In one of its sub-issues on appeal, Dunster argues that the trial court's order dismissing Dunster's direct claims should be reversed because the trial court, in a written letter, explained it only did so based on the grounds of efficiency and judicial economy. But the trial court's informal explanation justifying its ruling was not based on any grounds advanced in appellees' motions for summary judgment. Accordingly, the trial court's informal reasoning is not an independent basis on which to assign error, and thus we do not address it. *See Macias v. Rylander*, 40 S.W.3d 679, 683 (Tex. App.—Austin 2001, pet. denied) ("We will affirm the summary judgment on appeal if any ground asserted in the motion for summary judgment is a valid ground for rendering summary judgment.")

Under Texas law, the business and affairs of a corporation are managed through a board of directors.[11]  *See* Tex. Bus. Orgs. Code § 21.401(a).  Directors owe a fiduciary duty to their corporations in the actions they take as directors.  *Ritchie*, 443 S.W.3d at 868.  A director's fiduciary status includes three broad duties:  obedience, loyalty, and due care.  *See Loy v. Harter*, 128 S.W.3d 397, 407 (Tex. App.—Texarkana 2004, pet. denied) (citing *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984)).  These duties are owed to the corporation, not to individual shareholders or even to a majority of shareholders.  *Gearhart Indus.*, 741 F.2d at 721.  A director's fiduciary status also includes a duty to dedicate "uncorrupted business judgment for the sole benefit of the corporation."  *Ritchie*, 443 S.W.3d at 868 (quoting *International Bankers Life Ins. v. Holloway*, 368 S.W.2d 567, 577 (Tex. 1963)).

A breach of fiduciary duty necessarily requires the existence of the duty itself.  The issue here is therefore whether any fiduciary duty between the members of LoneStar Logo existed.  Dunster argues that the unanimity provision in Section 5.01(b)(iii) of the Agreement creates a fiduciary duty upon all parties, and that appellees, in bidding for the 2017–2026 contract, violated said duties.  This unanimity provision states in relevant part:

> The Managers may not cause the Company to do any of the following unless there is unanimous agreement among the Managers:  . . . (iii) take any action that will result in any benefit, financial or otherwise, flowing from the Company to any Member, or any entity affiliated with any Member, that is not made equally available to every other Member in proportion to their respective pro rata share of the Membership Units.

---

[11]  Texas law defines a closely-held corporation as a corporation having fewer than thirty-five shareholders and its stock is not publicly traded.  *See* Tex. Bus. Orgs. Code § 21.563. Neither party disputes that LoneStar Logo meets this definition.

Appellees respond that Texas law does not recognize fiduciary duties between members of a closely-held corporation, or, in the alternative, no fiduciary duties existed in the first place because the Agreement, which was voted through majority agreement of the members, intentionally foreclosed any fiduciary duty that the members owed each other. We agree with appellees.

The Texas Supreme Court has held that members of an LLC owe a fiduciary duty to the LLC, but not to the individual members themselves. *Ritchie*, 443 S.W.3d 856, 890 n. 62 ("We have not previously recognized a formal fiduciary duty to individual shareholders, and we believe that better judgment counsels against doing so."). The *Richey* court held that, "[a]bsent a contractual or other legal obligation, the officer or director has no duty to conduct the corporation's business in a manner that suits an individual shareholder's interests when those interests are not aligned with the interests of the corporation and the corporation's shareholders collectively." *Id.* at 888–89 (footnote omitted). Recently, the Texas Supreme Court again declined to recognize a fiduciary duty owed to members, holding that a director cannot owe a fiduciary duty to the corporation while simultaneously owing an informal fiduciary duty to a shareholder to operate the corporation for that shareholder's benefit. *See In re Estate of Poe*, 648 S.W.3d 277, 287 (Tex. 2022). Accordingly, as members of the closely-held corporation, appellees did not owe either a formal or informal fiduciary duty to Dunster and therefore appellees could not have violated such duties when they formed LoneStar Management without Dunster.[12]

---

[12] Dunster cites to *Allen v. Devon Energy Holdings, LLC* to support its proposition that Texas law recognizes informal fiduciary duties among members of a closely-held corporation. 367 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2012, pet. granted, judgm't vacated w.r.m.). However, in that case, the Houston Court of Appeals recognized an informal fiduciary duty to a fellow member only when "the alleged fiduciary has a legal right of control and exercises that control by virtue of his status as the majority owner and sole member-manager of a closely-held

16

Notwithstanding our above conclusion, the *Richey* court noted that disputes in closely-held corporations may be prevented and resolved through shareholders' agreements and that the Legislature granted corporate founders and owners "broad freedom to dictate for themselves the rights, duties, and procedures that govern their relationship with each other and with the corporation." *Ritchie*, 443 S.W.3d at 881; *see also* Tex. Bus. Orgs. Code §§ 7.001(d)(3) (providing that, in limited liability corporation, liability of governing person may be limited or eliminated by its certificate of formation or company agreement), 101.401 (providing that limited liability company agreement may expand or restrict any duties, including fiduciary duties, and related liabilities that member, manager, officer, or other person has to company or to member or manager of company); *Strebel v. Wimberly*, 371 S.W.3d 267, 285 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding that fiduciary duty claim was foreclosed by operation of contractual disclaimer within limited partnership agreement). Here, as permitted by both Sections 7.001(d)(3) and 101.401 of the Business Organizations Code, the members voted by majority agreement to eliminate any prohibition on the members' outside business ventures. This decision was reflected in the Agreement as follows:

> **5.07 Conflicts of Interest.** Each Manager, Member and officer of the Company at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, including ones in competition with the Company, with no obligation to offer to the company or any other Member, Manager or officer the right to participate.

---

LLC." *Id.* at 395–96. While we are not persuaded that such an analogous factual scenario exists here, we need not further address the application of *Allen* because we find that LoneStar Logo's Agreement foreclosed the possibility of a fiduciary duty owed towards fellow members.

The evidence is uncontroverted that LoneStar Logo was formed for the sole purpose of operating the 2007–2016 contract. Because of this, appellees claim, the 2017–2026 contract would fall within the phrase "other business ventures" in Section 5.07. We agree. And importantly, nothing precluded Dunster from bidding on the 2017–2016 logo program itself, as the Agreement provided that "[t]he Managers may not cause the Company to] take any action that will result in any benefit, financial or otherwise, flowing from the Company to any Member, or any entity affiliated with any Member, that is not made equally available to every other Member in proportion to their respective pro rata share of the Membership Units." Accordingly, even viewing the evidence in the light most favorable to Dunster, *see Ford Motor Co.*, 135 S.W.3d at 601, we conclude appellees did not violate a fiduciary duty to Dunster because, under both Texas law and the parties' Agreement, none existed. We overrule Dunster's second issue.[13]

### *Issue #3 – Dunster's motion for new trial based on newly-discovered evidence*

Dunster argues the trial court abused its discretion in denying Dunster's motion for new trial because newly-discovered evidence after the summary judgment would have a material effect in showing that the redemption was done for an improper purpose and therefore void.

In November 2017, Dunster sought discovery related to appellees' financials related to LoneStar Management, to which appellees lodged objections. In March and July 2018, the trial court granted appellees' respective motions for partial summary judgment. In December 2018, in response to Dunster's motion to compel, the trial court ordered that appellees produce the requested documents. Dunster alleges that the evidence gleaned from this compelled

---

[13] Because we have overruled Dunster's second issue on these two grounds, we need not address appellees' argument regarding Dunster's lack of personal damages. *See* Tex. R. App. P. 47.1.

18

discovery showed that LoneStar Logo's 2016 capital calls were only initiated because appellees improperly redirected millions in funds that rightfully belonged to LoneStar Logo into an account for LoneStar Management. Dunster claims that LoneStar Logo still paid the costs of operations under the TxDOT logo program contract while appellees, at the same time, paid themselves millions in distributions from the cash that LoneStar Management redirected from LoneStar Logo. But for these breaches of fiduciary duties, Dunster claims, LoneStar Logo would not have been short on cash and the capital calls would not have been necessary. Dunster therefore asserts that the capital calls were not done for a valid business purpose and thus the redemption was void. *See Zauber*, 591 S.W.2d at 938. Appellees respond that, among other things, the newly-discovered evidence was not in fact new, it was cumulative of information Dunster already possessed, and that it was immaterial because it had no impact on the issue of whether the redemption of Dunster's interests was void.

The denial of a motion for new trial is reviewed for an abuse of discretion. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). A party seeking a new trial on grounds of newly-discovered evidence must show that (1) the evidence has come to its knowledge since trial, (2) its failure to discover the evidence sooner was not due to a lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably produce a different result if a new trial were granted. *Id.* But a mere accusation that a party abused the discovery process is not alone sufficient to justify overturning trial court's ruling. *See Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 146 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Appellees argue, and we agree, that the content of LoneStar Logo's financial documents are not material because they would only serve to persuade the trial court that the redemption was not done for a "valid business purpose" (*i.e.* the second element of the *Zauber*

19

exception).  Because we have already concluded Dunster failed to prove the first element of the *Zauber* exception (i.e. the ousted stockholder's membership status was involuntarily destroyed), the issue of whether it can prove the second element is irrelevant.  Thus, to the extent that Dunster argues these newly discovered financial documents seek to negate the validity of the redemption insofar as appellees' exercise to redeem was done for an invalid business purpose, we conclude the trial court did not abuse its discretion in denying Dunster's motion for new trial.  We overrule Dunster's third issue.

## CONCLUSION

Having overruled all of Dunster's issues, we affirm the trial court's orders on appellees' motions for partial summary judgment and the trial court's order denying Dunster's motion for new trial.

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Kelly and Smith

Affirmed

Filed:   January 26, 2024

20